Charles W. CARLSTROM, Southern California Children's Aid Foundation, Inc., a Corporation, Southern California District Council of the Assemblies of God, Inc., a Corporation, and The Salvation Army, a Corporation, Appellants,

v.

UNITED STATES of America, Appellee.

No. 16123.

United States Court of Appeals Ninth Circuit.

Feb. 15, 1960.

9.

**804**

H. G. Sloane, Rubin & Seltzer, James L. Focht, Jr., San Diego, Cal., for appellants.

Perry W. Morton, Asst. Atty. Gen., A. Donald Mileur, Roger P. Marquis, Attys., Dept. of Justice, Washington, D. C., Laughlin E. Waters, U. S. Atty., Albert N. Minton, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES and JERTBERG, Circuit Judges, and JAMESON, District Judge.

BARNES, Circuit Judge.

This is an appeal from a final judgment of the district court in a condemnation proceeding, after a jury trial. The government action condemned *first*, on May 1, 1953, an estate for years, and *secondly*, on June 16, 1955 (by an amended complaint), fee title, both in a portion of an aircraft plant (Plancor # 20) at San Diego, California.

This plant, declared surplus after World War II, was purchased by *Carlstrom* from the government in May 1948 at a surplus property sale. He thereafter transferred title of various portions to the other plaintiffs and appellants herein.

Seventy acres were condemned, but by time of trial the just compensation for only forty-six and nine-tenths acres remained to be determined. For convenience, the property included in the *term taking* was described in "parcels"; the property in the *fee taking* described in "tracts."

The verdict the jury returned covered the fair market value of nine tracts, six fourteen month term parcels, and six options to renew—a total of twenty-one valuations.[1] In addition, by the answer to special interrogatories, the jury determined the fair market value by which each parcel and tract was enhanced because of parking facilities appurtenant thereto, which values had been included in their larger general verdicts. This called for fifteen additional valuations. There were also three interrogatories as to the reasonable probability of unitization. Based on the jury's award for the fourteen month term, the court made a prorated and adjusted award for the second or twelve month extended term. Other awards had been made by agreement (United States v. 70.39 Acres of Land, D.C., 164 F.Supp. 451, 460) between the parties.

| 1. "Parcel No. | Fair Market Value of 14-Month Term | | | Fair Market Value of Option to Renew |
|---|---|---|---|---|
| 5 | $ 62,000.00 | | | $ 17,712.00 |
| 6 | $ 185,000.00 | | | $ 52,856.00 |
| 7 | $ 202,000.00 | | | $ 57,684.00 |
| 9–A | $ 315,000.00 | | | $ 90,000.00 |
| 9–B | $ 700.00 | | | $ 200.00 |
| X | $ 12,000.00 | | | $ 3,428.00 |

| Tract No. | Fair Market Value | | Tract No. | Fair Market Value |
|---|---|---|---|---|
| A–100 | $ 275,000.00 | | A–108 | $122,000.00 |
| A–101 | $1,146,000.00 | | A–109 | $195,000.00 |
| A–102 | $2,830,000.00 | | A–120 | $ 22,000.00 |
| A–106 | $ 30,000.00 | | A–121 | $208,000.00 |
| A–107 | $ 49,000.00" | | | |

Error is alleged as follows:

(1) In permitting condemnation of the term and fee in one action; (2) in permitting condemnation of the term and fee before one jury at one time; (3) in rejecting or admitting certain evidence; [2] and (4) by rejecting appellants' instructions with respect to the evidence so admitted or rejected.

Appellants' first two alleged errors are really one: that the case was too big for any one jury to swallow and digest. "Of course, appellants' basic grievance is that they did not receive sufficient compensation for the interests and title which the government took from them." (Appellants' Opening Brief, p. 3.) [3]

We would not deny that a difficult task was presented to the jury in this case. That would not render this case unique in legal history. But as the trial was handled by the trial judge; as he carefully and patiently explained in layman's language (as much as it was possible) the intricacies of condemnation to the jury, we felt an admirable task had been ably accomplished. And we also thought the jury indicated by its conclusions it had arrived at a rather sound understanding of the lawsuit and of the issues submitted to the jurors.

2. Appellants charge error as follows: (a) by admitting evidence of the cost of putting buildings then in partial disrepair into usable condition, and in admitting photographs of "specific defects;" (b) by restricting cross-examination of the witness who testified as to (a) above; (c) by rejecting appellants' offer of proof of cost of reproduction of improvements, less depreciation; (d) by rejecting Convair leases while admitting Convair manufacturing contracts; (e) by admitting evidence of Carlstrom's purchase price; (f) by admitting evidence of Carlstrom's declaration of value of the property before the Board of Equalization; and (g) by rejecting appellants' offer of proof of fair market rental value from July 1, 1954 to June 30, 1955.

3. The average values each side's appraisers testified to (in round figures) and the amounts awarded by the jury are as follows:

Use and Occupancy:

| Parcel No. | Government | Landowner | Jury |
|---|---|---|---|
| 5 | $ 45,000.00 | $ 120,000.00 | $ 62,000.00 |
| 6 | $ 133,000.00 | $ 371,000.00 | $ 185,000.00 |
| 7 | $ 147,000.00 | $ 398,000.00 | $ 202,000.00 |
| 9–A | $ 282,000.00 | $ 580,000.00 | $ 315,000.00 |
| 9–B | $ 750.00 | $ 1,000.00 | $ 700.00 |
| X | $ 14,700.00 | $ 17,000.00 | $ 12,000.00 |

Option:

| Parcel No. | Government | Landowner | Jury |
|---|---|---|---|
| 5 | $ 6,000.00 | $ 32,000.00 | $ 18,000.00 |
| 6 | $ 18,000.00 | $ 110,000.00 | $ 53,000.00 |
| 7 | $ 17,000.00 | $ 118,000.00 | $ 58,000.00 |
| 9–A | $ 38,000.00 | $ 160,000.00 | $ 90,000.00 |
| 9–B | $ 100.00 | $ 238.00 | $ 200.00 |
| X | $ 2,000.00 | $ 5,000.00 | $ 3,400.00 |

Fee:

| Tract No. | Government | Landowner | Jury |
|---|---|---|---|
| A–100 | $ 205,000.00 | $ 480,000.00 | $ 275,000.00 |
| A–101 | $ 565,000.00 | $2,530,000.00 | $1,146,000.00 |
| A–102 | $1,650,000.00 | $6,000,000.00 | $2,830,000.00 |
| A–106 | $ 7,000.00 | $ 9,100.00 | $ 30,000.00 |
| A–107 | $ 50,000.00 | $ 77,000.00 | $ 49,000.00 |
| A–108 | $ 105,000.00 | $ 175,000.00 | $ 122,000.00 |
| A–109 | $ 150,000.00 | $ 350,000.00 | $ 195,000.00 |
| A–120 | $ 17,000.00 | $ 42,000.00 | $ 22,000.00 |
| A–121 | $ 150,000.00 | $ 380,000.00 | $ 208,000.00 |

Here, say appellants, "the only figures available were supplied by hired experts, one group seeking to inflate values to the benefit of the owners, and the other seeking to deflate them to the benefit of the sovereign." If this be true, it is a truth applicable to all condemnation cases, and in fact, to all lawsuits involving partisan expert testimony. It would be ideal, of course, if experts were just experts, and not partisans nor advocates. Perhaps there are better ways to determine values of condemned land, or other factual disputes as to which experts give their opinions, but the adversary procedure— each side with its experts and occasionally aided by experts of the court's choosing—is as yet the best our law has found. It is practical, and acceptable to most litigants.

■■ Whether the taking of the fee should be added to a lawsuit originally containing merely the taking of a term estate is a matter peculiarly within the discretion of the trial court, judicially exercised. Eagle Lake Improvement Co. v. United States, 5 Cir., 1947, 160 F.2d 182; Silberman v. United States, 1 Cir., 1942, 131 F.2d 715.

We find no abuse of discretion in permitting such an amendment. No case is cited by appellants as holding that it was.

■ Once the issues are framed by the pleadings, it again is a part of the judicial discretion of the trial judge as to how the several issues are to be tried. It might well be that one jury could more accurately pass on one parcel of realty, and another on a second. Or, one jury better pass on five parcels, or ten, rather than one, and another on the next five or ten. The converse may be true. Here there were thirty-six valuations determined by the jury involving ten buildings on nine "tracts" of land—actually nine subdivisions of one contiguous piece of industrial property being used fundamentally for its one undisputed best purpose, but capable of several uses. We cannot find as a matter of law that one jury is incapable of deciding thirty-six property valuations in four differing types of estates (nine in ordinary fee title, six in value of leaseholds, six in

value of options, and fifteen in value of parking facilities appurtenant to leasehold and fee). None of these four concepts of property ownership is bizarre or occult concepts of rights in real property. The average lay person during his life time has some dealing with leaseholds, options, title in fee, and, in Southern California at least, a great deal of experience with parking facilities. Under careful supervision, explanation and instruction (and no specific instruction given below is here criticized), there seems no reason why an ordinary jury could not ascertain the values herein required of this jury. As a matter of law, there was no abuse of the district court's discretion in permitting it to do so.

Appellants urge that the case here is so complicated that to require one jury to find the answer deprives them of due process of law. They rely on Gwathmey v. United States, 5 Cir., 1954, 215 F.2d 148. This is the only case on the subject cited by appellants in either their opening or closing briefs. For that reason we consider it at some length.

Gwathmey, supra, involved the condemnation of the Cape Canaveral area in Florida. Appellant points out that in the instant case, the trial took seventeen weeks as compared to three in Gwathmey; that the jury deliberated fifteen days in this case and three days in Gwathmey; that here there were seven forms of verdicts while in Gwathmey but one. In Gwathmey the appellate court believed

> "the very size of the case as tried, without the additional complexities [added by a "value zone system" used by government appraisers], was such that the jury must have been overwhelmed. In fact, during the trial there were so many tracts and so much evidence that the witnesses, the attorneys and even the judge himself seemed to be confused at times."

215 F.2d 148, at pages 155–156. Therefore, say appellants here, if Gwathmey was a denial of due process in a condemnation case, then the instant case was doubly so.

We do not find the Gwathmey case controlling. We say this for several reasons.

(1) As the court says in Gwathmey, "Whether or not there has been an abuse of discretion, whether or not there has been a denial of due process, are questions which turn on the circumstances of each case." Id., at page 157.

(2) Here there were at the most thirty-six "tracts;" in Gwathmey there were originally nine hundred and thirty-three separate tracts and ultimately two hundred and thirty-eight separate tracts and verdicts.

(3) In Gwathmey the government appraisers developed a theory of arbitrarily assigning tracts to certain "value zones," which "added greatly to the confusion and to the mass of evidence with which the jury was burdened." Id., at page 154.

(4) In Gwathmey attorneys and owners of property were excused from attendance at the trial, yet evidence as to value of their property was introduced during their absence. "Cross-examination [was] either not allowed at all or allowed so long after direct examination

that it was totally ineffective." Id., at page 154.

(5) In Gwathmey the appellate court conceded that inasmuch as but fifty separate tracts remained in the case after appeal, "It may well be that * * * this case can be fairly tried in one proceeding before one jury." Id., at page 158.

(6) We note not only that Gwathmey is a decision of the fifth circuit, not binding on this circuit, but that the opinion was the product of agreement between one circuit judge and one district judge, and that the third member of the panel, before his death, "felt very strongly and insisted this case should be affirmed."

(7) But one case is cited in the entire Gwathmey opinion. It is Atlantic Coast Line R. Co. v. United States, 5 Cir., 1943, 132 F.2d 959, where the fifth circuit found no confusion or prejudice in *seriatim* trials of different tracts before one jury.

But the primary reason we do not find the Gwathmey case controlling is that we find no abuse of the court's discretion in supervising the introduction of the evidence. To the contrary we think it was a difficult job well done. We adopt the language used in appellee's brief as pertinent.[4]

4. "The handling of this case by the district court, far from being an abuse of discretion, showed great competence, skill and ability. The jury was given more assistance than a jury normally receives even in long and complicated cases. From time to time during the trial, the jury was told the purpose of the introduction of particular classes of evidence, the law applicable thereto and the facts it would have to decide. When it retired to the jury room to deliberate it had before it, summarized in exhibits, practically all of the really determinative factors in the case. It had all comparable sales and leases in Exhibits 25–S, 33, 57 and 57–1. All of the pertinent data about these sales and leases were compiled in easily comprehensible tabular form, size, location, description of improvements, dates, terms, rents, rents averaged per square foot per month, and sales price averaged per square foot of building and open space. The jury had before it the summary of each expert's testimony on both the fee and the term takings. Again, all these exhibits illustrating the expert's

opinion were clearly tabulated by parcel or tract to explain the basis of the opinion.

The capitalization of income approach was summarized for the jury. The income was capitalized for the property as a whole, and each major building of the fee taking was listed separately on an exhibit illustrating how to arrive at fair market value by capitalization of income. The trend of prices of real estate in the San Diego area was also illustrated for the jury by an exhibit. There were other exhibits, maps, photographs, and mathematical illustrations, to refresh the jury's recollection of this property with which it had become intimately familiar through the several months of testimony. The jury had seen the property. It heard detailed descriptions of its condition. It had heard the preparations, the factors, the reasons, the highest and best uses, and the fair market values repeated 14 times * * *." Appellee's Brief, pp. 83–85. (References to transcript omitted.)

■ Appellant urges that the obvious mistake made by the jury as to Tract A–106 invalidates their conclusions as to all other values. The jury rendered a verdict of $30,000 for this parcel. The highest value testified to was $10,000; the lowest $6,500. The court ordered $22,000 remitted to fix the figure of $8,-000. This was agreed to.

The significance of this one error is subject to debate. Does proof of but one mistake prove the jury did a remarkably efficient job on the other thirty-five valuations that did not need correction? It was, as appellee points out, with respect to a valuation that was one-tenth of one per cent of the total alleged value of the condemned property. We should not gloss over an error, no matter how small. It was an error. The jury made it. It was corrected. In our opinion, in view of the correction, it was not a prejudicial error, or one that colors the entire result of the jury's deliberations so as to make it suspect. Far less would it invalidate it as a matter of law. We find no failure of due process.

■ We next consider the evidentiary points. Appellants' first point is that the eighty-eight photographs of the D series showing deterioration and damage to various points in the buildings were inadmissible. The condition in which the buildings were at time of taking was a material, admissible fact. No better evidence than actual photographs could be offered. They would be better than pure oral description by one who had seen the property. We find no undue emphasis on such photographs in the record. The cost of repairs was material to the extent repairs were required to be made to put the property in a condition capable of use—to restore it to a "normal maintenance" condition.

Appellants cite Kinter v. United States, 3 Cir., 1946, 156 F.2d 5. That case involves the admissibility of the cost of *past repairs* as an item to be considered in determining *present* market value and holds such cost not a proper factor. It is inapplicable to this situa-

tion. Mr. Hallock gave no opinion as to present market value.

■■ Appellants next sought to impeach the credibility of the witness Hallock's testimony by showing that some of the repairs he had suggested as "necessary" as of May 1, 1953, had not in fact been made down to the time of trial. Appellants proved this fact, and developed many others on cross-examination. Finally the court called a halt, pointing out that whether or not repairs were made, the property could still be used, and that "this question of usefulness is a matter of degree." We think such supervision of cross-examination, and its curtailment when over-extensive, lies precisely within the discretion granted the trial court in such matters.

Appellants cite no cases wherein such action by the court has been deemed error, and we think for good reason. United States v. Block, 9 Cir., 1947, 160 F.2d 604, 607.

■ Appellants' offer of proof of cost of reproduction of improvements, less depreciation, was properly denied.

It should be noted that the trial judge permitted the experts for the appellants to consider (and to state to the jury that they had considered) reproduction costs in coming to their conclusion as to the then fair market value, and in checking on it. Reproduction cost is not the best evidence of fair market value if other evidence is available. Cf. United States v. Toronto, Hamilton & Buffalo Nav. Co., 1949, 338 U.S. 396, 403, 70 S.Ct. 217, 94 L.Ed. 195; United States v. 44.00 Acres of Land, etc., 2 Cir., 1956, 234 F.2d 410. The cases cited by appellant do no more than support the proposition that in a proper case admission of such evidence is not reversible error.

■ The court refused to permit evidence of the rental paid by the government under thirty Convair leases which had been entered into when the Korean War broke out. The court ruled they arose out of government necessity occasioned by war, and did not reflect the true market value. The court relied on

United States v. Cors, 1949, 337 U.S. 325, at pages 333–334, 69 S.Ct. 1086, at page 1091, 93 L.Ed. 1392, where it was said:

"It is not fair that the government be required to pay the enhanced price which its demand alone has created. That enhancement reflects elements of the value that was created by the urgency of its need for the article. It does not reflect what 'a willing buyer would pay in cash to a willing seller,' United States v. Miller, supra, 317 U.S. [369] 374, 63 S.Ct. [276] 280, 87 L.Ed. 336, in a fair market. It represents what can be exacted from the government whose demands in the emergency have created a sellers' market. In this situation, as in the case of land included in a proposed project of the government, the enhanced value reflects speculation as to what the government can be compelled to pay. That is a hold-up value, not a fair market value. That is a value which the government itself created and hence in fairness should not be required to pay."

We think the trial court's reliance on this case, and his ruling based thereon, entirely proper.

No cases are cited by appellants in support of their position that it was error to admit evidence of the purchase price paid by Carlstrom, $1,050,000, in 1948 on a value fixed in 1947; that it was error to admit Carlstrom's declaration as to value made by him before the State Board of Equalization; and that it was error to reject proof of fair market rental value for the period July 1, 1954 to June 30, 1955.

The six or seven year difference in time between the date of condemnation and when Carlstrom had bought the land goes to the weight to be attached to the sale price, not to its admissibility. Simmonds v. United States, 9 Cir., 1952, 199 F.2d 305, 307–308; United States v. Becktold Co., 8 Cir., 1942, 129 F.2d 473, 479.

Nor was it error to admit, *as against Carlstrom alone*, Carlstrom's declaration as to value, Murdock v. United States, 8 Cir., 1947, 160 F.2d 358, 362; McCandless v. United States, 9 Cir., 1935, 74 F.2d 596, 603–604, nor to reject the fair market rental value of the lease as of July 1, 1954. By taking and paying for an option to renew the lease given prior to the July 1, 1954 date, the government had acquired the right to renew the lease at the then existing rate of rental. United States v. 70.39 Acres of Land, D.C.S.D.Cal.1958, 164 F.Supp. 451, 463–467.

Finding no error, the judgment is affirmed.