UNITED STATES of America, Plaintiff-Appellee,

v.

55.22 ACRES OF LAND, MORE OR LESS, IN YAKIMA COUNTY, WASHINGTON, et al., Defendants,

William J. Fox, Jr., et ux., Defendants-Appellants.

No. 22368.

United States Court of Appeals Ninth Circuit.

May 21, 1969.

Kenneth C. Hawkins (argued), Yakima, Wash., for defendants-appellants.

Robert S. Lynch (argued), Roger P. Marquis, John G. Gill, Attys., Clyde O. Martz, Asst. Atty. Gen., Washington, D. C., Smithmoore P. Myers, U. S. Atty., Spokane, Wash., Ronald R. Hull, Asst. U. S. Atty., Yakima, Wash., for plaintiff-appellee.

Before MADDEN, Judge of the United States Court of Claims, and HAMLEY and DUNIWAY, Circuit Judges.

HAMLEY, Circuit Judge:

This is a condemnation proceeding instituted by the United States to acquire land in Yakima County, Washington, for the construction of an interstate highway. Mr. and Mrs. William J. Fox, Jr., hereinafter collectively referred to as "Fox," were the owners of the condemned parcel of land. The Fox tract consisted of approximately 6.77 acres, of which the Government took fee simple title to 6.12 acres and a perpetual easement covering .031 acres, rendering the sliver of remaining land practically valueless. Based on a jury verdict, Fox was awarded a judgment in the sum of $29,500. Being dissatisfied with the amount of the award, Fox took this appeal.

Fox first contends that the trial court erred in excluding evidence of the sale of adjacent property to Fox, offered to show a comparable sale relevant on the issue of just compensation.

We first summarize background facts and the tendered evidence. Fox is a house mover by occupation. For eleven years he had maintained the headquarters of his business on the condemned tract and had kept heavy equipment there when it was not in use. Fox had resided on the premises for twenty-one years.

Fox had known since September, 1956, that there was to be a freeway in the area. He had been approached by right-of-way agents as early as May 1, 1964, concerning the acquisition of his property for the highway project. Fox thereafter began looking around for another tract suitable for his home and house-moving business.

For a time, the lowest price Fox was quoted for property suitable for his purposes was $2,500 an acre. Then he noticed a real estate company "For Sale" sign on an adjacent tract of unimproved pasture land owned by Walter W. Floyd. A portion of Floyd's land was also to be condemned for the highway. Fox inquired about the Floyd tract and learned that he could purchase eight acres at $1,500 an acre, for a total purchase price of $12,000.

According to the offer of proof, Fox, dealing through Floyd's real estate agent, signed an earnest money agreement on August 21, 1964, to purchase the eight-acre Floyd property for $12,000. A consideration of one hundred dollars was paid by Fox at that time. A down payment of twenty-nine percent of the purchase price was to be made when the contract was executed and the balance was to be paid at the rate of $1,000 a year.[1] The west side of the proposed freeway constituted one boundary line of the Floyd property which was sold to Fox. According to the offer of proof, the purchase price was not enhanced by the freeway project, since the freeway would not have been useful to Fox in operating his house-moving business.

The United States filed its Declaration of Taking of the Fox property on August 31, 1964, and Fox was served with the condemnation papers on September 8, 1964. The Floyd-Fox transaction was ready to close on November 10, 1964, and a real estate contract containing the above-described terms was executed on that date. Title insurance was provided, the twenty-nine percent down payment was made, and the real estate broker received the usual commission calculated on the $12,000 purchase price.

After execution of the contract, Fox moved his house onto his newly-acquired tract. He established his house-moving

---

1. The earnest money agreement was not offered in evidence and the record before us does not establish that all of these terms were set forth in that instrument.

business there and also ran some cattle. He has not, however, made any payment since November 10, 1964. Fox and Floyd entered into an agreement (apparently informal and oral) that Fox would not have to make payments under the contract until he obtained money from the sale of some of his equipment. Up to March, 1966, at least, Fox apparently had not obtained the necessary money from this or any other source.

The trial court rejected this offer of proof of an assertedly comparable sale, primarily upon the ground that the Floyd-Fox sale and purchase was not an open-market transaction, unaffected and uninfluenced by the taking. In so ruling, the court apparently placed considerable reliance upon a similar ruling by another district judge, concerning essentially the same offer of proof, tendered in another condemnation proceeding involving a nearby section of the same right-of-way.

In a federal condemnation proceeding, the owner of the land taken by the United States is entitled to "just compensation." U. S. Constitution, Amendment 5. Just compensation is usually determined by the ascertainment of fair market value, or what a willing buyer would pay in cash to a willing seller. United States v. Miller, 317 U.S. 369, 374, 63 S.Ct. 276, 87 L.Ed. 336; see also, United States v. Virginia Electric Co., 365 U.S. 624, 633, 81 S.Ct. 784, 5 L.Ed. 2d 838. Production of evidence of comparable sales, or sales of similar property not too far removed in time from the date of taking, is an appropriate method of determining value in condemnation cases. United States v. Eden Memorial Park Association, 9 Cir., 350 F.2d 933, 935. The sales of other property must in fact be comparable to be admissible. Fairfield Gardens, Inc. v. United States, 9 Cir., 306 F.2d 167, 172.

It follows that when evidence pertaining to an assertedly comparable sale is tendered, and objection is made thereto, a preliminary question of admissibility is presented. The determination of that question calls for an exercise of a sound discretion by the trial court, and the ruling thereon is reviewable only for abuse of discretion. United States v. Eden Memorial Park Association, 9 Cir., 350 F.2d 933, 935.

Considering in its entirety the offer of proof concerning the Floyd-Fox sale and purchase, we are unable to say that the trial court abused its discretion in rejecting this evidence. The transaction was between two condemnees in this eminent domain proceeding. It was entered into with knowledge of the impending taking. One boundary of the purchased tract coincided with the prospective highway right-of-way. The payment terms prescribed in the contract were in effect waived when Fox was unable to make the annual payments.

These circumstances warranted the trial court in concluding that this was not an open-market transaction between persons dealing at arm's length and without reference to the imminent condemnation. Accordingly, we hold that the trial court did not err in excluding evidence pertaining to the Floyd-Fox transaction.

At the time of the taking, certain improvements were located on Fox's property, including a well-maintained seven-room house with wooden siding, but without foundation, two smaller and older rental houses, and a large shed or shop in fair to poor condition. Counsel for Fox made the following offer of proof with regard to the value of these improvements:

"We offer to prove by the witness who was on the stand, Clarence Marshall, who is a competent and successful builder, and who has personal familiarity with buildings in question, that the cost less depreciation of the home which is Exhibit 68, is $11.00 a square foot, and that the cost less depreciation of the residence is $11.00 a square foot, and the cost less depreciation of the shop is $5.50 a square foot."

While counsel there referred to "cost less depreciation," the context indicates that he meant reproduction cost less depreciation. He further explained to the trial court that the $11.00 a square foot

value was to be applied to all three houses on the tract. Counsel indicated that, with this testimony, the cost less depreciation of the improvements on the land would be in the neighborhood of $35,000.

The trial court sustained objection to testimony of this nature, and Fox contends that the court erred in so ruling.

The trial court rejected the tendered proof of reproduction cost less depreciation of the improvements on Fox's property on the ground that such evidence should not be received as direct evidence of market value where more reliable bases of market value are available. The trial court was of the view that the opinions based on comparable sales, and upon the general familiarity of the expert witnesses with real estate values in the area, offered by expert witnesses for both sides, were more reliable. The trial court thought that these other bases of determining value were more reliable under the circumstances of this case because they took into account factors such as the location of the improvements, and the market for such improvements, which are not considered in fixing reproduction cost less depreciation.[2]

Fox apparently did not wish to limit his offered evidence to a mere statement by his expert witness, Marion L. Pierce, that he considered reproduction cost less depreciation along with other factors in arriving at his opinion of over-all market value. Instead, he sought to prove reproduction costs less depreciation as direct evidence of value. The trial court considered this impermissible unless the improvements were of an unusual nature, such as a church, for which comparable sales or other indicia of market value would probably be unavailable.

There was testimony by a Government expert witness that the highest and best use of the Fox property was for home-sites and a service-type business such as house-moving, which was the use Fox was making of the property. But, in the opinion of the trial court, this did not establish that the particular improvements on the Fox property were "well adapted" to that land, in the sense contemplated by the rule of many jurisdictions that estimates of reproduction cost may be introduced on direct examination whenever the buildings are well adapted to the land on which they stand.[3]

We have reviewed the kind of evidence as to market value which was received from both plaintiff and defendant, and the considerations which moved the court to reject the offered evidence of reproduction cost less depreciation as direct evidence of value, and we do not believe the trial court erred in excluding such evidence.

Generally speaking, reproduction cost is not considered the best evidence of fair market value if other evidence is available. Carlstrom v. United States, 9 Cir., 275 F.2d 802, 808. One reason given for this view is that such evidence fails to take account of the fact that, under the circumstances of a particular case, no one might wish to reproduce the improvement. United States v. Toronto, Hamilton & Buffalo Navigation Co., 338 U.S. 396, 403, 70 S.Ct. 217, 94 L.Ed. 195.

Fox did not offer to prove that a prudent investor would reproduce the improvements at the reproduction cost figure his expert witness was prepared to state. He did not offer to show that willing vendees and vendors would deem reproduction cost less depreciation relevant in negotiating a purchase and sale of the property. Nor did he limit his offer to a general statement that reproduction cost less depreciation had been considered by his expert witness as one guide in arriv-

---

2. In this connection, the trial court referred to the following observation in United States v. Toronto, Hamilton & Buffalo Navigation Co., 338 U.S. 396, 403, 70 S.Ct. 217, 221, 94 L.Ed. 195:
"Original cost is well termed the 'false standard of the past' where, as here, present market value in no way reflects that cost. So with reproduction cost, when no one would think of reproducing the property." (Footnotes omitted.)

3. In 2 Orgel, Valuation under Eminent Domain, 2d Ed., § 190, pages 9–10, it is stated that this is the "prevailing" rule.

ing at a fair market value. See Winston v. United States, 9 Cir., 342 F.2d 715, 724; Fairfield Gardens, Inc. v. United States, 9 Cir., 306 F.2d 167, 174. Had Fox so expanded or limited his offer of proof, it might have been accepted.

There are many decisions holding that, in a proper case, admission of reproduction cost less depreciation is not reversible error. In a particular case there may be special circumstances, such as the unavailability of evidence pertaining to comparable sales, which rendered such evidence appropriate. United States v. Toronto, Hamilton & Buffalo Navigation Co., 338 U.S. 396, 403, 70 S.Ct. 217. It does not follow that, under different circumstances, the rejection of this kind of evidence is error. See Winston v. United States, 9 Cir., 342 F.2d 715, 724; Carlstrom v. United States, 9 Cir., 275 F.2d 802, 808.

It is true that the comparable sales relied upon by the experts for both sides in this case related, for the most part, to unimproved tracts, or tracts on which the improvements were quite dissimilar from those on the Fox tract. It seems evident that the experts were relying upon the specified comparables primarily for the purpose of arriving at a fair market value per acre, unimproved, of the Fox property. They were then apparently adding a figure to represent the incremental value of the improvements on that property.

Reading their testimony as a whole, it appears that their opinions as to the incremental value of the improvements were based upon their understanding as to what properties containing somewhat similar improvements were selling for in the area. This was most clearly demonstrated in the cross examination of George M. Lemon, a Government witness. He arrived at an incremental value of the Fox improvements by ascribing to them a square-foot value based upon his general knowledge of market values in the area. While the experts did not relate these opinions to specifically-described comparable sales, this was not objectionable, and Fox did not contend otherwise

in the trial court or here. Fox's expert, Marion L. Pierce, as well as the Government's two experts, must have employed this valuation technique.

We are in agreement with the trial court that while Fox was shown to be making the highest and best use of his property, there was no evidence to indicate that his three houses and the shop were "well adapted" to that use or to the land upon which they stood. No doubt, having regard for Fox's personal circumstances, these improvements were satisfactory for his purposes, but they were not shown to be of such a character that, if not on the land, one purchasing the acreage would have wished to construct generally similar improvements. Therefore, even under the prevailing rule that estimates of reproduction cost may be introduced on direct examination whenever the buildings are well adapted to the land on which they stand (see note 3), that rule would not be applicable here.

Affirmed.