**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA; UNITED
STATES ARMY CORPS OF ENGINEERS,
            *Plaintiffs-Appellees,*

                v.                              No. 07-35310

4.85 ACRES OF LAND, more or less,               D.C. No.
situated in Lincoln County, State               CV-03-00063-RWA
of Montana; JERRY CROSKREY;                     OPINION
COUNTY OF LINCOLN; PAMELA
FLOWERS; CALEB FLOWERS; 1.00
ACRE OF LAND; ELMER LLOYD,
            *Defendants-Appellants.*

Appeal from the United States District Court
for the District of Montana
Richard W. Anderson, Magistrate Judge, Presiding

Argued and Submitted
August 7, 2008—Seattle, Washington

Filed September 29, 2008

Before: Harry Pregerson, William C. Canby, Jr., and
Cynthia Holcomb Hall, Circuit Judges.

Opinion by Judge Hall

13883

**COUNSEL**

Allan M. McGarvey, McGarvey, Heberling, Sullivan & McGarvey, Kalispell, Montana, for the defendants-appellants.

Kathryn E. Kovacs, United States Department of Justice, Environment and Natural Resources Division, Washington, D.C., for the plaintiff-appellee.

---

**OPINION**

HALL, Circuit Judge:

This dispute arises from a condemnation action involving several plots of land in Lincoln County, Montana. The property was vacant when condemned, but the landowners were attempting to develop a portion of it into subdivisions. During the trial on the issue of just compensation, the landowners sought to introduce evidence of sales at three nearby subdivisions which took place after the taking. The district court refused the evidence. The landowners appeal the judgment entered pursuant to the jury award, arguing that the district court abused its discretion in making a per se evidentiary ruling excluding all post-taking sales. We agree. Because the district court's error prejudiced the landowners, we vacate the judgment and remand for a new trial.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

In September 2000, Jerry Croskrey purchased a 21-acre parcel of land adjoining the Murray Springs fish hatchery in Libby, Montana from the Lincoln County School Board. Croskrey paid $65,000 for the land, and also bought an option to purchase the neighboring 20-acre lot for $55,000, which he exercised in June 2002. In August 2001, Croskrey's real estate agent, Pamela Flowers, purchased Croskrey's 21-acre

lot for $142,000. In April 2002, Flowers subdivided four one-acre lots from the 21-acre property and transferred them to family members. Flowers then began plans to subdivide and develop part of her property into the Good Hope subdivision. In September 2002, the county granted preliminary approval for four one-acre lots in the subdivision.

Croskrey filed a similar subdivision plan with the county, seeking to subdivide the southern portion of his 20-acre lot into six one-acre lots. The county granted preliminary approval for the subdivision (called the Hidden Meadows subdivision) in October 2002. However, the Montana Department of Environmental Quality denied Croskrey's application in December of 2002, finding the proposal incomplete.

On April 25, 2003, before either Flowers or Croskrey received final approval for their planned subdivisions, the government filed six condemnation actions to acquire land as a buffer zone around the fish hatchery. The lead action condemned 4.85 acres of Croskrey's 20-acre lot. The second action condemned a 3.65-acre portion of Flowers' 21-acre lot. In the third and fourth actions, the United States condemned two one-acre lots which had allegedly been transferred from Flowers to her family members and possibly back to Croskrey. In the sixth action, the United States condemned a one-acre lot purportedly owned by Flowers' father.[1]

The district court bifurcated the question of the propriety of the condemnation actions from the determination of just compensation, and entered judgment for the government on the necessity of the taking in the summer of 2005. Shortly thereafter, Croskrey and Flowers began developing a subdivision project on their remaining property, which neighbored the condemned land. The project, which Croskrey and Flowers called the Murray Island subdivision, consisted of five one-acre lots, one of which included land that had originally been

---

[1]The fifth action is not the subject of this appeal.

part of the Good Hope subdivision. The county granted preliminary plat approval for the Murray Island subdivision in October 2006, and the five lots sold for approximately $75,000 each within the next few weeks. Final plat approval was granted in December 2006.

The landowners requested that the court allow into evidence sales from the Murray Island subdivision for the trial on the issue of just compensation. At the final pretrial conference, the court indicated that it would exclude the evidence. In chambers the day after the trial began, the landowners once again attempted to introduce sales from the Murray Island subdivision as well as sales from two nearby subdivisions — the Driftwood Cove and Mariners Haven projects.[2] After hearing arguments from both parties, the court refused to admit into evidence any sales that occurred after the taking, reasoning that post-taking sales were not relevant to "what would be in the contemplation of the willing buyer and willing seller on the mandatory date of the taking."[3] The court expressed concern, however, that excluding the post-take sales would "deny[ ] the jury . . . some very, very relevant credible evidence as to what market value really was."

The jury trial primarily consisted of testimony regarding the value of the condemned land. Flowers testified, based on her experience as a real estate agent, her study of the market, and her sales projections for the Good Hope subdivision, that her property was worth approximately $33,000 per acre when the taking occurred. She valued the one-acre lots at approximately $40,000 each. Based on his experience as a real estate investor, Croskrey testified that his own lot was worth $32,823 per acre.

---

[2]The Driftwood Cove and Mariners Haven sales were offered not necessarily as direct evidence of the value of the condemned land but to support Flowers' sales projections for the Good Hope subdivision.

[3]Though the court excluded evidence of sales of lots at the subdivisions, it allowed Flowers to testify that she completed the Murray Island subdivision.

The government's expert, John McFaddin, reached much lower values for the condemned properties. McFaddin opined that the highest and best use of the two larger lots was as single family residence sites, rather than as subdivisions, and therefore based his estimated values for those tracts on fourteen larger lot sales which predated the taking by between a few weeks and nearly five years. McFaddin estimated the per acre value of Flowers' and Croskrey's lots to be about $3,000. After adjusting for improvements that the landowners had made to the properties, McFaddin concluded that Flowers' lot was worth $17,712 and Croskrey's lot was worth $16,456. McFaddin estimated the four smaller lots to be worth approximately $14,000 each, based on fifteen sales of lots ranging in size from less than one acre to more than five acres.

After the close of the trial, the jury began deliberations. During deliberations, the jury inquired of the court whether sales at the Murray Island subdivision were barred from evidence or whether there had in fact been no sales at that subdivision to date. The court responded that it had not allowed any evidence of market activity that occurred after the date of the taking because post-taking sales would not have been in the contemplation of the willing buyer and willing seller.

The jury ultimately awarded $18,535 for Croskrey's parcel, $19,065 for Flowers' parcel, and $14,000 for each of the four small parcels. On March 15, 2007, the court entered judgment. The landowners timely appealed.

## II.   STANDARD OF REVIEW

A district court's exclusion of evidence is reviewed for abuse of discretion. *United States v. 42.13 Acres of Land*, 73 F.3d 953, 956 (9th Cir. 1996); *United States v. 55.22 Acres of Land*, 411 F.2d 432, 434 (9th Cir. 1969). "A district court abuses its discretion when it makes an error of law, when it rests its decision on clearly erroneous findings of fact, or when we are left with 'a definite and firm conviction that the

district court committed a clear error of judgment.' " *United States v. Hinkson*, 526 F.3d 1262, 1277 (9th Cir. 2008) (quoting *Delay v. Gordon*, 475 F.3d 1039, 1043 (9th Cir. 2007)). To reverse a jury verdict for evidentiary error, we must find that the trial court abused its discretion in a manner that prejudiced the appealing party. *Tennison v. Circus Circus Enters., Inc.*, 244 F.3d 684, 688 (9th Cir. 2001). Prejudice exists when the trial court's error "more probably than not . . . tainted the verdict." *Id.*

## III.  DISCUSSION

Before and during the trial on the issue of just compensation, the landowners attempted to introduce into evidence several comparable sales which took place after the taking. The district court refused to admit any of these sales into evidence, and the landowners urge us to find error in this ruling.

**[1]** When the government condemns a property, it must provide the landowner with just compensation. U.S. Const. Amend. V. Just compensation "is usually determined by the ascertainment of fair market value, or what a willing buyer would pay in cash to a willing seller." *55.22 Acres*, 411 F.2d at 434. Comparable sales are generally persuasive evidence of the market value of a condemned property, whether offered as direct proof or in support of a witness' opinion. *United States v. 1,129.75 Acres of Land*, 473 F.2d 996, 998 (8th Cir. 1973); *United States v. 320.0 Acres of Land*, 605 F.2d 762, 798 (5th Cir. 1979); *55.22 Acres*, 411 F.2d at 434.

**[2]** The threshold question of admissibility of comparable sales generally rests in the trial court's discretion. *55.22 Acres*, 411 F.2d at 434; *1,129.75 Acres*, 473 F.2d at 998. However, though the Ninth Circuit has not yet weighed in on the issue, "[t]he majority of circuit courts have rejected a *per se* rule in eminent domain proceedings prohibiting the introduction of evidence of post-taking comparable sales." *United*

*States v. 68.94 Acres of Land*, 918 F.2d 389, 398 (3d Cir. 1990).

[3] For example, in *United States v. 63.04 Acres of Land*, the seminal case on the admissibility of post-taking comparable sales, the Second Circuit held that the trial court abused its discretion in excluding a comparable sale on the ground that it occurred after the taking because "[t]here is no absolute rule which precludes consideration of subsequent sales." 245 F.2d 140, 144 (2d Cir. 1957). In *1,129.75 Acres of Land*, the Eighth Circuit followed the Second Circuit's approach, holding that "[t]he question of admissibility of subsequent comparable sales is one to be decided on the facts of each case, and not by reference to a rigid exclusionary rule which has no rational foundation." 473 F.2d at 999; *see also United States v. 312.50 Acres of Land*, 812 F.2d 156, 157 n.3 (4th Cir. 1987) (citing *1,129.75 Acres*, 473 F.2d at 996). The Third Circuit has also recognized the necessity of a case-by-case approach, ruling in *68.94 Acres* that the district court abused its discretion when it "excluded consideration of post-taking comparable sales . . . without considering the overall comparability of the offered sales . . . ." 918 F.2d at 399.

[4] The general rule favoring admission of post-taking sales is "limited . . . by the consideration that a condemnation itself may increase prices and the government should not have to pay for such artificially inflated values." *63.04 Acres*, 245 F.2d at 144; *see also 68.94 Acres*, 918 F.2d at 398-99; *1,129.75 Acres*, 473 F.2d at 998. However, even when subsequent sales may reflect artificially enhanced values, courts have been reluctant to endorse blanket exclusions. In *320.0 Acres*, the Fifth Circuit, faced with the possibility that the condemnation had inflated the values of post-taking sales, held that "in many cases the preferable course and the only just course would be to adopt a liberal policy of admission, permit the possibly tainted [i.e. artificially inflated] sales to go to the fact-finder under proper instructions, and leave it to the

fact-finder to weigh them . . . ."[4] 605 F.2d at 800; *see also United States v. 691.81 Acres*, 443 F.2d 461, 463 (6th Cir. 1971) (possibility of artificial price inflation "[could not] be determined through use of a general exclusionary rule prior to trial."); *United States v. 0.161 Acres of Land*, 837 F.2d 1036, 1044 (11th Cir. 1988) (given the "preference for allowing the fact-finder to decide what, if any, weight to attach to evidence of post-taking sales," the district court abused its discretion by adopting per se rule, even though it cited possibility of artificial inflation); *cf. 68.94 Acres*, 918 F.2d at 398-99 (suggesting that a per se exclusionary rule might be justified after the trial court made the finding that post-taking sales had been artificially inflated by the condemnation).

[5] We agree with our sister circuits that the admission of comparable sales in a condemnation action should not be determined by a per se rule excluding all post-taking sales. *See 68.94 Acres*, 918 F.2d at 398-99; *0.161 Acres*, 837 F.2d at 1044; *691.81 Acres*, 443 F.2d at 463; *1,129.75 Acres*, 473 F.2d at 998; *63.04 Acres*, 245 F.2d at 144. Regardless of whether a sale occurs before or after the taking, a trial court should "make separate findings of the comparability of each of the proffered comparable properties to the condemnee's property" by comparing them to the condemned property in terms of their "respective characteristics . . . geographic proximity . . . and the closeness in time of the sales." *68.94 Acres*, 918 F.2d at 399; *see also 1,129.75 Acres*, 473 F.2d at 998. Courts should also be cognizant of the possibility that the condemnation itself has enhanced the value of the proffered comparable sales, as that factor may weigh against admission. *68.94 Acres*, 918 F.2d at 399; *320.0 Acres*, 605 F.2d at 800; *63.04 Acres*, 245 F.2d at 144. However, "except in unusual instances," differences in the location, characteristics, and

---

[4]The Fifth Circuit did qualify this holding somewhat, stating that it may be within a trial court's discretion to exclude sales that reflect artificial increases due to the condemnation if "a reasonable number of other 'most comparable' sales remain." *Id.* at 801-02.

timing of potential comparable sales should "go to the weight of the evidence rather than . . . to the admissibility." *691.81 Acres*, 443 F.2d at 463; *accord 320.0 Acres*, 605 F.2d at 800.

The government concedes that no per se exclusionary rule bars post-taking sales. However, it argues that in this case there was no error because the district court did not adopt a per se rule. According to the government, the district court merely excluded the Murray Island sales because they occurred too long after the taking in a proper exercise of its discretion.[5]

[6] This record does not bear out this argument. In the conference after the first day of trial, the district court refused to admit any post-taking sales, regardless of how long after the taking they occurred. The court first rejected the Driftwood Cove sales, which post-dated the taking by between a year and three months and a year and a half, finding that they were "not relevant to what would be in the contemplation of a willing buyer and willing seller on the mandatory date of taking more than one year prior." Next, the court excluded the Mariners Haven sales — which occurred between six months and three years after the taking — ruling that "comparable sales either for the purposes of regression analysis or simply as comparable properties, after the date of the take — as far after as these sales are — are not admissible on the grounds of relevance to the standards that the jury has to apply." The court then made the same determination regarding the Murray Island sales, which occurred approximately three and a half years after the condemnation, stating "the same thing would be on the Murray Island sales . . . [i]f the arguments are the same."[6] In responding to the jury's question regarding why

---

[5]The government does not explain the district court's exclusion of the Driftwood Cove and Mariners Haven sales because it takes the position that the landowners waived the argument that those sales were improperly excluded. However, we read the landowners' brief as appealing the exclusion of all post-taking sales.

[6]The district court made all of these determinations notwithstanding that it had allowed in evidence of comparable sales predating the taking by as much as 4.8 years.

the Murray Island sales were not offered in evidence, the court instructed the jury that it had "not allowed anything into evidence about [ ] market activity [subsequent to the taking] . . . because the willing buyer, willing seller . . . would not have known about it."

**[7]** The record thus leaves no doubt that the district court excluded all post-taking sales from consideration. The court made no findings regarding the comparability of the excluded sales to the condemned property, nor did it consider the possibility of artificial inflation or otherwise examine the probative value of the sales.[7] Instead, the court simply excluded all post-taking sales based on "the erroneous premise . . . that evidence of subsequent sales is never proper for consideration in arriving at fair market value." *1,129.75 Acres*, 473 F.2d at 999. This was an abuse of discretion. *Id.* at 998; *68.94 Acres*, 443 F.2d at 463; *0.161 Acres*, 837 F.2d at 1044; *691.81 Acres*, 443 F.2d at 463; *63.04 Acres*, 245 F.2d at 144. Moreover, the error was prejudicial because the jury awards were very close to the government's estimates and much lower than the landowners' estimates and the post-take sale values. *See Tennison*, 244 F.3d at 688 (prejudice exists if error "more probably than not . . . tainted the verdict"); *cf. 1,129.75 Acres*, 473 F.2d at 999 (district court's per se exclusionary rule was harmless because the jury's verdict was about halfway between the government's and landowner's estimates). While it is possible, as the government suggests, that some of the post-taking comparable sales would have been inadmissible notwithstanding the district court's per se rule for various reasons, we decline to address those issues on appeal as they involve factual questions that should be decided in the first instance at the trial level. Accordingly, we vacate the jury awards and remand for a new trial with directions for the district court to ascertain the admissibility of each proffered comparable sale.

VACATED and REMANDED.

---

[7]The government does not argue that the condemnation artificially inflated the values of the post-taking sales in this case.