Circuit Judge NGUYEN,
with whom Judges McKEOWN, W. FLETCHER, BYBEE, and WATFORD join, concurring in part and dissenting in part:
I concur in Part I of the majority’s opinion, which concludes that the district court failed to fulfill its gatekeeping function with regard to the expert testimony at issue. I also agree with the majority that we are unable to determine based on the record before us whether the expert testimony is admissible. See Maj. Op. at 467 (“We cannot speak to the admissibility of the expert testimony at issue here because the record before us is too sparse to determine whether the expert testimony is relevant and rehable.”). Further, to the extent the majority overrules Mukhtar v. California State University, 299 F.3d 1053 (9th Cir.2002), amended by 319 F.3d 1073 (9th Cir.2003), I am in accord. There is no reason to require a new trial whenever a district court fails to conduct a Daubert analysis, regardless of whether on remand the district court would determine that disputed expert testimony is relevant and reliable.
I part ways with the majority, however, in its application of harmless error review. The majority’s analysis is seriously flawed because it conflates a district court’s ga-tekeeping error with a district court’s erroneous determination of admissibility. Here, assuming inadmissibility — a question we cannot answer at this juncture— the majority applies harmless error review and concludes that a new trial is needed because the “improper admission of the expert testimony severely prejudiced [defendants].” Maj. Op. at 465 (emphasis added). The majority thus unnecessarily burdens both the parties and the judicial system by ordering a new trial without having a sufficient basis to determine whether the disputed expert testimony was admissible. Further, the majority’s approach undercuts its effort to open the door to a limited remand occasioned by overruling Mukhtar. Because I would conditionally vacate the judgment and remand with instructions to the district court to conduct a Daubert determination in the first instance, I respectfully dissent from Parts II and III of the majority opinion.
I.
A district court must “ensure the reliability and relevancy of expert testimony” and “make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.” Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); see also Fed.R.Evid. 702. In short, a district court serves an essential “gatekeeping” function in evaluating proffered expert testimony. Kumho Tire, 526 U.S. at 141, 119 S.Ct. 1167.
In this case, the district court abdicated its gatekeeping role by failing to evaluate the relevancy and reliability of the expert testimony at issue. Given this oversight, we must determine whether the district court’s misstep resulted in the admission of evidence that should have been excluded. In the past, when the record before us was sufficient to make this determination, we have proceeded to evaluate whether the erroneous admission or exclusion of evidence was harmless. See, e.g., United States v. Morales, 720 F.3d 1194, 1197 (9th Cir.2013) (district court’s error “was harmless because the erroneously admitted hearsay did not materially affect the verdict”); United States v. L85 Acres of Land, 546 F.3d 613, 620 (9th Cir.2008) *469 (district court’s error was not harmless because improper exclusion of evidence was prejudicial). This approach makes perfect sense — once we determine that inadmissible evidence was presented, or that admissible evidence was excluded, we can then analyze whether the error materially affected the verdict. See United States v. Bailey, 696 F.3d 794, 803 (9th Cir.2012).
Here, however, we face a markedly different scenario. As the majority correctly concludes, “the admissibility of the expert testimony at issue” cannot be determined “because the record before us is too sparse.” Maj. Op. at 467. Given this conclusion, harmless error review is simply not possible at the current juncture. Indeed, we cannot even say whether there was an “error” to “materially affect the verdict.” If the disputed expert testimony was admissible pursuant to Rule 702 and Daubert, despite the district court’s failure to fulfill its gatekeeping function, then no harm, no foul. On the other hand, if the testimony was inadmissible, then a harmless error analysis would be appropriate. Thus, in light of the outstanding question regarding the admissibility of the expert testimony at issue, a remand to the district court for a Daubert analysis is the proper course.
II.
The majority goes awry in adopting an approach that ignores this antecedent question of admissibility. In considering the district court’s gatekeeping failure, the majority asserts that “[w]hen we conclude evidence has been improperly admitted, ‘we consider whether the error was harm-
less.’ ” Maj. Op. at 464 (quoting Bailey, 696 F.3d at 802-03). Though innocuous at first glance, this remark harbors a grave oversight: it equates an incorrect determination of admissibility with a failure to conduct a Daubert analysis.
The distinction between the two is crucial. With the former, we know whether a party was wrongfully permitted or denied the opportunity to present certain evidence, and we can determine whether that error was prejudicial. With the latter, we cannot gauge prejudice unless we are able to determine what the jury would have been permitted to hear had the district court properly discharged its gatekeeping duties.[1]
By skipping over the question of admissibility and heading straight for prejudice, the majority’s analysis results in two key missteps. First, the majority dubs the Barabins “the beneficiaries of ... erroneously admitted evidence.” Id. at 465. But, as the majority acknowledges, we have no idea whether the expert testimony at issue was in fact “erroneously admitted.” On a proper Daubert analysis — a task we decline to engage in on appeal— the testimony might indeed have been admissible. In this circumstance, the Bara-bins would merely be the beneficiaries of evidence they were entitled to present in the first place.
Second, in bypassing admissibility, the majority engages in a perplexing prejudice analysis that emphasizes the fact that the disputed expert testimony was “critical to *470 the proponent’s case.”[2] Id. Indeed, based on its conclusion that “the Barabins’ claim depended wholly upon the erroneously admitted evidence,” the majority finds “no doubt the error was not harmless.” Id. Not so. Even if the Barabins’ claim depended on the expert testimony at issue, we have no idea whether the testimony was “erroneously admitted,” let alone whether any error “materially affect[ed] the verdict.” Morales, 720 F.3d at 1197. If the expert testimony was admissible, then the jury simply reached a verdict based on evidence it was properly permitted to consider, despite the district court’s error.
The flaw in the majority’s logic is highlighted by the fact that not a single case it cites supports the type of harmless error analysis it applies. Rather, in each case, we engaged in harmless error review only after we determined that evidence had been improperly deemed admissible or inadmissible.[3] Indeed, this is true of Simpson v. Thomas and United States v. 4.85 Acres of Land — two cases specifically discussed by the majority in support of its decision. Contrary to the majority’s assertion, neither case involved merely a situation where a “district court abdicate[d] its responsibility to answer a threshold question of admissibility.” Maj. Op. at 466. Rather, in both cases, we found actual error by the district court in deeming evidence admissible or inadmissible before proceeding to harmless error review. See Simpson, 528 F.3d at 689 (“The district court erred in admitting the evidence of Simpson’s three prior felony convictions.”); U.85 Acres of Land, 546 F.3d at 620 (“[T]he [district] court simply excluded all post-taking sales based on ‘the erroneous premise ... that evidence of subsequent sales is never proper for consideration in arriving at fair market value.’ ” (quoting United States v. 1,129.75 Acres of Land, 473 F.2d 996, 999 (8th Cir.1973)) (final alteration in original)).
In fact, our case law suggests a notably different harmless error inquiry when a district court fails to fulfill its gatekeeping function. For example, in Hangarter v. Provident Life & Accident Insurance Co., 373 F.3d 998 (9th Cir.2004), the district court incorrectly concluded that Daubert was inapplicable to the non-scientific testimony of an independent consultant. Id. at 1015-16, 1018. We found the error harmless because “the [district] court’s probing of [the consultant’s] knowledge and experience was sufficient to satisfy its gatekeep-ing role under Daubert.” Id. at 1018. In short, the district court’s failure to analyze *471 the expert testimony pursuant to Daubert was harmless because the analysis it nonetheless conducted satisfied Daubert and the testimony was thus correctly admitted. This was a proper application of harmless error review — where the error identified on appeal pertains to the gatekeeping function, the reviewing court should consider whether the gatekeeping error was harmless.[4]
In contrast, the majority here finds a gatekeeping error, but embarks on a prejudice inquiry that focuses on how crucial the disputed expert testimony was to the prevailing party’s success. In doing so, the majority effectively treats the testimony as inadmissible, even as it professes to reserve judgment on the question. The majority cannot have it both ways.
III.
I would conditionally vacate the judgment and remand to the district court with instructions to determine whether the disputed expert testimony was admissible pursuant to the requirements of Rule 702 and Daubert. If the testimony is deterr mined to be admissible, the district court may reinstate the verdict. If, however, the testimony is inadmissible, the district court should ascertain whether the wrongful admission of that expert testimony prejudiced the defendants and, if so, order a new trial. In the former case, the system will not be unreasonably burdened with a retrial. In either case, the parties retain their right to appeal. This solution makes practical and legal sense.

. The majority cites United States v. Rahm, 993 F.2d 1405 (9th Cir.1993), for the proposition that "[w]e treat the erroneous admission of expert testimony the same as all other evidentiary errors, by subjecting it to harmless error review.” Maj. Op. at 464. Rahm, however, only engaged in harmless error review after concluding that the testimony at issue was admissible and thus improperly excluded. See Rahm, 993 F.2d at 1416 (deeming the error not harmless where the district court "erroneously excluded ... proffered expert testimony ... [that] was admissible”).

. It seems to me that it would be the rare case indeed where expert testimony was not "critical to the proponent’s case.”

. See, e.g., Bailey, 696 F.3d at 805 (not harmless error where trial court wrongfully admitted a civil complaint); Jules Jordan Video, Inc. v. 144942 Canada, Inc., 617 F.3d 1146, 1158-59 (9th Cir.2010) (harmless error where district court improperly permitted counsel to read 716 requests for admissions to the jury); United States v. Laurienti, 611 F.3d 530, 548 (9th Cir.2010) (harmless error where district court abused its discretion by sustaining certain government objections to expert testimony); Simpson v. Thomas, 528 F.3d 685, 691 (9th Cir.2008) (not harmless error where district court improperly admitted prior convictions); 4.85 Acres of Land, 546 F.3d at 620 (not harmless error where district court improperly excluded post-taking sales in a condemnation action); Cohen, 510 F.3d at 1127 (not harmless error where district court wrongfully excluded expert testimony); Obrey v. Johnson, 400 F.3d 691, 702 (9th Cir.2005) (not harmless error where district court abused its discretion in excluding testimony); Rahm, 993 F.2d at 1415 (not harmless error where district court erroneously excluded expert testimony); United States v. Echavarria-Olarte, 904 F.2d 1391, 1398-99 (9th Cir.1990) (harmless error where district court improperly admitted expert testimony on drug cartel).

. The majority characterizes Hangarter as “in-apposite,” describing it as a case where the district court "did not fail to fulfill its gatek-eeping function.” Maj. Op. at 466 n. 7. I disagree. It is hard to imagine a more clear gatekeeping error than a district court choosing not to analyze proffered expert testimony under Daubert because it mistakenly found Daubert inapplicable.