**EMERICK, Carol, Administratrix of the Estate of Michael L. Emerick, deceased, and Emerick, Carol and Emerick, Donald, individually, Appellants**

**v.**

**U.S. SUZUKI MOTOR CORP. and Suzuki Motor Company, Ltd. 13767 Freeway Drive, Santa Fe Springs, California.**

No. 82–3506.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Nov. 29, 1984.

Decided Dec. 13, 1984.

John C. Youngman, Jr., Candor, Youngman, Gibson & Gault, Williamsport, Pa., for appellants.

Carl A. Eck, Scott A. Millhouse, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, Pa., for appellees.

Before HUNTER, WEIS, Circuit Judges, and COHEN,* District Judge.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge.

This appeal is from a judgment in a products liability action, which was entered pursuant to a jury verdict in favor of appellees U.S. Suzuki Motor Corporation and Suzuki Motor Company, Ltd. ("Suzuki"), and from the denial of the motion for a new trial of appellants Carol Emerick, as administratrix of the estate of Michael Emerick, and Carol and Donald Emerick, as individuals ("Emericks"). Subject matter jurisdiction is based on 28 U.S.C. § 1332 (1982). Because we find that the trial court neither abused its discretion in refusing to grant a new trial nor committed any errors of law, we affirm the judgment below in its entirety.

I.

On April 17, 1979, Michael Emerick sustained fatal injuries when his 1972 Suzuki

---

* Honorable Mitchell H. Cohen, United States District Judge for the District of New Jersey, sitting by designation.

motorcycle crashed with its kickstand allegedly in the down position. His parents, Carol and Donald Emerick, instituted suit individually and on behalf of the decedent's estate against Suzuki, alleging that the kickstand was defective in several ways and that these defects caused the accident. The Emericks also sought recovery on failure-to-warn and simple negligence theories, and for punitive damages. Prior to trial, the Emericks dropped the simple negligence theory.

The trial court bifurcated the trial into a liability stage and damages stage, leaving, over the Emericks' opposition, the issue of punitive damages to the damages stage. At the liability stage, the jury returned a verdict for Suzuki, finding that the kickstand was not defective, and that there was no duty to warn about operating the motorcycle with the kickstand not fully retracted. The Emericks moved for a new trial on several grounds, only four of which are contested on this appeal.[1] The trial court denied the motion for new trial, and entered judgment in favor of Suzuki.

## II.

The Emericks' first contention is that the trial court abused its discretion in refusing to admit expert and videotape testimony of accident-site tests, both during the Emericks' case-in-chief and during rebuttal. We disagree. In March, 1982, Suzuki sought by interrogatories information concerning any accident reconstruction or product defect testing done by the Emericks. After being ordered by the court to answer those interrogatories, the Emericks responded on June 10, 1982, after the discovery cut-off-date, that no testing or accident reconstruction had been done. Similarly, at the required pre-pretrial conference, the Emericks did not list the videotapes as possible exhibits in the case. Finally, at the pretrial conference on June 10, 1982, the Emericks informed the trial court that no testing had

been done. At that time, Suzuki informed the court that it would object to any attempt by the Emericks to introduce evidence of subsequent testing at trial.

Trial commenced on June 24, 1982. On Sunday, June 27, the Emericks for the first time conducted accident-site testing, and attempted to introduce expert and videotape testimony of such tests the next day, during their case-in-chief. The trial court refused to admit this evidence, holding that the Emericks failed to show good cause for violating the local court rules,[2] and that the introduction of such "last-minute" testing would unfairly prejudice Suzuki. The Emericks then attempted to introduce the evidence during their rebuttal case, and the trial court again refused to admit such testimony, ruling that the testimony concerned the elements of the Emericks' case-in-chief, and thus was improper rebuttal evidence. In denying the Emericks' motion for a new trial, the court reiterated the above holdings.

 We find that the trial court did not abuse its discretion in refusing to admit the expert and videotape testimony either during the Emericks' case-in-chief or on rebuttal. The Emericks clearly violated the local court rules, and thus were obligated to show good cause before such testimony could be admitted. To meet this burden, the Emericks argue that the testing could not have been done until after June 11, 1982, when they first viewed Suzuki's videotape of the accident-site, and that, because the videotape was proper rebuttal evidence, any prejudice to Suzuki disappeared between the time of the testing on June 27 and the start of the Emericks' rebuttal case on July 9. Neither of these arguments has merit.

First, the trial court correctly found that the Emericks were well aware of the importance of videotape accident-site testing well before June 11, when they viewed

---

1. The Emericks originally appealed on five grounds, but dropped the fifth ground in their reply brief. Reply Brief at 3–4.

2. The trial court's local rules obligate all parties to list their exhibits in their pretrial memoranda, and prohibits subsequent additions at trial unless good cause is shown. M.D.Pa.R. 408.3.

Suzuki's tapes, and that they intentionally chose not to perform such testing. Second, and perhaps more importantly, the Emericks' expert and videotape testimony belonged in their case-in-chief, as the true purpose of such testimony was to demonstrate the defective nature of the motorcycle's kickstand. It is well settled that evidence which properly belongs in the case-in-chief but is first introduced in rebuttal may be rejected, so as to avoid prejudice to the defendant and to ensure the orderly presentation of proof. *See, e.g., Skogen v. Dow Chemical Company*, 375 F.2d 692, 705 (8th Cir.1967); *Olsen v. United States*, 521 F.Supp. 59, 68–69 (E.D.Pa.1981), *aff'd mem. sub nom. Olson v. Ford Motor Co.*, 688 F.2d 823 (3d Cir.1982). Thus, because the Emericks did not conduct their accident-site tests until one day before such evidence would be ordinarily admissible, the trial court did not abuse its discretion in finding that the introduction of such evidence would unfairly prejudice Suzuki.

The Emericks next contend that the trial court erroneously instructed the jury on the elements of the Emericks' failure-to-warn theory. The trial court instructed the jury that if they found "that the dangers involved in driving [the] motorcycle with the kickstand down were obvious, then [Suzuki] had no duty to warn ...." App. at 1657. The Emericks contend that this instruction was error as it did not instruct the jury to consider the question of obviousness as "generally known and recognized by the community of motorcycle riders." Appellants Brief at 25. This argument is meritless.

■■■ The question of obviousness is an objective one, with the focus being on the fictional "ordinary consumer." *See, e.g., Sherk v. Daisy-Heddon*, 285 Pa.Super. 320, 427 A.2d 657, 661 (1981), *rev'd on other grounds*, 498 Pa. 594, 450 A.2d 615 (1982). As the trial court found, the "ordinary consumer" for purposes of the obviousness test is none other than the "reasonable person" who sits in the jury box. Thus, the trial court did not err in instructing the jury to consider whether they themselves, as potential consumers of motorcycles, saw an obvious danger in the kickstand. Indeed, it is likely that non-motorcycle riders would find the danger of a non-retracted kickstand less obvious than would "the community of motorcycle riders," and thus the Emericks were hardly prejudiced by the trial court's instruction.

■■■ The Emericks' third contention is that the trial court abused its discretion in bifurcating the trial into a liability stage and damages stage, and in not allowing the Emericks to litigate their punitive damages claim during the liability stage. We disagree. In *Lis v. Robert Packer Hospital*, 579 F.2d 819, 824 (3d Cir.), *cert. denied*, 439 U.S. 955, 99 S.Ct. 354, 58 L.Ed.2d 346 (1978), a panel of this court held that before a decision to bifurcate may be made, the trial court, in the exercise of its discretion, must weigh the various considerations of convenience, prejudice to the parties, expedition, and economy of resources. In the instant case, the trial court heard oral argument on the bifurcation issue at the pretrial conference, and noted that because the Emericks' product liability theory did not implicate any inquiry into Suzuki's conduct, allowing the question of punitive damages and its corresponding inquiry into conduct to be litigated at the liability stage of the trial would confuse the jury and unfairly prejudice Suzuki. Further, the trial court correctly noted that the Emericks were not entitled to submit the issue of punitive damages to the jury until they first established Suzuki's liability for compensatory damages. *See, e.g., Hilbert v. Roth*, 395 Pa. 270, 276, 149 A.2d 648, 652 (1959) ("The right to punitive damages is a mere incident to a cause of action—an element which the jury may consider in making its determination—and not the subject of an action in itself."). Thus, the trial court did not abuse its discretion in leaving the issue of punitive damages to the damages stage of the trial.

■■■ The Emericks' final contention is that the trial court erred in not informing counsel prior to instructing the jury as to how he would define "defect." This argu-

ment is meritless, for it has long been settled that "[a] trial judge is not required to write out his charge in advance and submit it to counsel for their editing and exceptions," *Puggioni v. Luckenbach Steamship Co.*, 286 F.2d 340, 344 (2d Cir. 1961), and nothing in Federal Rule of Civil Procedure 51 dictates otherwise.

For all the above reasons, therefore, we will affirm the judgment below in its entirety.