**Michele V. HAGANS, Charles I. Bryant and Arthur L. Content, as Co–Executors of the Estate of Theodore R. Hagans, Jr., Deceased, Appellants,**

v.

**HENRY WEBER AIRCRAFT DISTRIBUTORS, INC., Piper Aircraft Corporation and Machen, Inc.**

No. 87–1566.

United States Court of Appeals,
Third Circuit.

Argued Feb. 26, 1988.
Decided July 15, 1988.

Philip Silverman, Speiser, Krause & Madole, Washington, D.C., Arthur G. Raynes (argued), Raynes, McCarty, Binder, Ross & Mundy, Philadelphia, Pa., for appellants.

Thomas R. Harrington (argued), Kelly, Harrington, McLaughlin & Foster, Philadelphia, Pa., for appellee Henry Weber Aircraft Distributors, Inc.

John J. Tigert, Walter Smith (argued), Tigert Law Offices, Washington, D.C., James C. Stroud, Rawle & Henderson, Philadelphia, Pa., for appellee Machen, Inc.

Before BECKER, HUTCHINSON and SCIRICA, Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Circuit Judge.

This appeal requires us to examine a sanction imposed by the district court under Fed.R.Civ.P. 37 because of noncompliance with several discovery requests and a court order. The specific question we must decide is whether the district court erred by precluding plaintiffs from using a pilot expert in this litigation.

Plaintiffs, co-executors of the estate of Theodore Hagans, Jr., brought the underlying action for wrongful death and survivors' benefits against Henry Weber Aircraft Distributors (Weber Aircraft) and Machen, Incorporated (Machen).[1] Hagans was the pilot of a Piper Aerostar 601P aircraft with a Superstar I modified engine designed by Machen and installed by Weber Aircraft, which crashed in April, 1984. Both Hagans and his son, a passenger, were killed in the crash.

After protracted discovery, in which plaintiffs failed to comply with several discovery requests and a magistrate's order, the magistrate imposed sanctions on plaintiffs. The district court concluded that the sanctions were warranted because of plaintiffs' counsels' failure to expeditiously and thoroughly prepare their case. The district judge then certified for appeal, as a controlling question of law under 28 U.S.C. § 1292(b) (Supp. III 1985), that portion of its June 29, 1987 order precluding plaintiffs from introducing substitute pilot-expert testimony at trial. We granted permission to appeal.

On appeal, plaintiffs make two arguments. First, that the sanction imposed is tantamount to dismissal, requiring a balancing test as set forth in *Poulis v. State Farm Fire & Casualty Ins. Co.*, 747 F.2d 863, 868 (3d Cir.1984). Second, that even if a balancing of the *Poulis* factors is not

required, the district court abused its discretion by precluding plaintiffs from using a substitute pilot expert.

We hold that a *Poulis* balancing is not required in this case, *see infra* Part II, and that the district court did not abuse its discretion. For purposes of chronology and clarity, we first discuss whether the district court abused its discretion. *See National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976); see also *Hicks v. Feeney*, 850 F.2d 152, 155, 156 (3d Cir. 1988) (Reviewing under abuse of discretion standard, appropriateness of dismissal as sanction). *Cf. Snow Machines Inc. v. Hedco, Inc.*, 838 F.2d 718, 724 (3d Cir.1988) (rule 11 sanctions).

I

Plaintiffs filed this action in July, 1984. After defendants filed answers to plaintiffs' amended complaint, and several preliminary matters were disposed of, the magistrate held a pretrial and scheduling conference on July 8, 1985. Pursuant to a stipulation, the magistrate set December 15, 1985 as the discovery deadline. *See* pretrial report filed July 11, 1985.[2] Because of delays in discovery, counsel for Weber Aircraft, on behalf of counsel for all parties, requested an extension of the deadline to April 15, 1986. The district court subsequently extended the deadline to July 14, 1986.

In December, 1985, Weber Aircraft submitted its third set of interrogatories to plaintiffs, requesting the identity of all expert witnesses, their opinions, and the factual bases therefor. By May, 1986, less than two months from the July 14 deadline for discovery, plaintiffs had not yet responded to defendants' expert interrogatories. Thereafter, counsel for defendant Weber Aircraft made written and telephone requests for answers from plaintiffs' coun-

---

**1.** Piper Aircraft Corporation, also named as a defendant, settled with plaintiffs and was voluntarily dismissed from the action.

**2.** Discovery matters were also discussed at pretrial conferences held by the district court on February 5, 1987, and by the magistrate on March 17, 1987.

sel.[3] Despite those efforts, plaintiffs failed to respond. On July 17, 1986, plaintiffs' counsel requested another extension of the time to complete discovery. *See* plaintiffs' July 17, 1986 motion. The district court, finding good cause, extended the deadline to November 30, 1986.

Because the plaintiffs still failed to respond, on January 14, 1987, pursuant to Weber Aircraft's motion, the magistrate compelled plaintiffs to file complete answers to Weber Aircraft's third set of interrogatories within fifteen days. The order provided that noncompliance would bar plaintiffs from presenting evidence at trial on the subject matter of those interrogatories. Although the case had been listed in the district judge's trial pool on January 28, 1987 and could be called to trial on twenty-four hours notice, plaintiffs did not respond to the interrogatories until February 2, 1987.

Plaintiffs' answers recited that they had retained Frederick C. Hoerner, a civilian employee of the United States Navy, as a pilot expert. However, they failed to disclose that on December 19, 1986, Hoerner conducted a flight test in connection with the Hagans' case and would rely on those results for his testimony. *See* Hoerner dep. at 113. The relevant answer stated only that Hoerner was expected to offer "[a] reconstruction of the Hagans' accident for the purpose of giving his opinion for the double engine failure and the resultant accident." Exhibit B attached to Machen's motion for sanctions. Despite the fact that the magistrate's January 14, 1987 order compelling discovery warned plaintiffs that failure to file full and complete answers might result in a sanction similar to that ultimately imposed,[4] the answers were vague, evasive and incomplete. In addi-

tion, at a pre-trial conference on February 5, 1987 the district judge specifically asked for all the bases for plaintiffs' experts' opinions, but plaintiffs did not mention a flight test. *See* J.A. at 59 (memorandum-order of magistrate).

Dissatisfied with plaintiffs' answers to the interrogatories, both Machen and Weber Aircraft separately submitted supplemental expert interrogatories. After another discovery conference on March 17, 1987, the magistrate ordered plaintiffs' counsel to file by March 19, 1987 more specific answers to certain interrogatories concerning Hoerner's opinions and the bases therefor.

On March 19, 1987, plaintiffs responded to Machen's supplemental interrogatories, one of which asked how Hoerner would reconstruct the Hagans' accident. The answer to that interrogatory also failed to mention that Hoerner had conducted a flight test.[5] The answer therefore was not only incomplete, but misleading, suggesting that no test had been conducted. Indeed, none of plaintiffs' answers to the supplemental expert interrogatories of either Machen or Weber Aircraft stated that Hoerner had conducted a flight test.

On March 24–25, defendants deposed Robert Nugent, plaintiffs' engine expert. On March 24, Nugent never mentioned that his opinions in this case were based on a flight test conducted by Hoerner. In fact, he stated that he lacked sufficient test data to support a conclusion that a defect existed. *See* J.A. at 59 (magistrate's opinion). On March 25, however, Nugent testified that based on information disclosed to him the previous evening, namely the results of Hoerner's flight test, he concluded that a

---

3.  Because we do not reach the *Poulis* factors, we will not distinguish between plaintiffs and their counsel in determining whether the district court abused its discretion.

4.  The magistrate ordered that plaintiffs file full and complete answers "or upon Affidavit of counsel that this Order has not been complied with, that plaintiffs be precluded from offering any evidence at trial regarding the subject matter of the Third Interrogatories." J.A. at 31 (Jan. 14, 1987 order of magistrate).

5.  The answer states in its entirety: "Mr. Hoerner will use data obtained from the NTSB report, information obtained from depositions, his personal knowledge and experience with aircraft, his training and background in accident investigation work to reach his opinions, as to what probably happened during the fatal flight." Exhibit H attached to Machen's motion for sanctions (answer to supplemental interrogatory no. 9).

defect existed. That same day, Hoerner was deposed and revealed that he had conducted a flight test on December 19, 1986.

Because plaintiffs had never disclosed the flight test, Machen and Weber Aircraft filed motions for sanctions against plaintiffs and their attorneys. Machen requested that plaintiffs' be precluded from introducing into evidence any testimony related to or derived from the flight test conducted by Hoerner. Weber Aircraft requested that plaintiffs' case be dismissed. The magistrate ordered Hoerner and Nugent to appear and testify at the hearing on the motions. Despite that order and assurances by plaintiffs' counsel, Hoerner did not appear. Furthermore, plaintiffs' counsel advised Nugent that he did not have to appear. Additionally, the magistrate ordered plaintiffs' counsel to provide certain information and to produce certain documents as addenda to their response to Machen's motion for sanctions. Plaintiffs' counsel supplied neither the requested information nor the requested documents.

After hearing oral argument, the magistrate declined to dismiss plaintiffs' case. However, the magistrate concluded that "plaintiffs formed their theory of liability based on information which was either fabricated or deliberately or recklessly withheld from the defendants." J.A. at 63 (memorandum-order of magistrate). He therefore imposed the following sanctions against plaintiffs under Fed.R.Civ.P. 37: Hoerner was precluded from testifying at trial, and his deposition testimony was stricken; all deposition testimony of Nugent based on information provided by Hoerner was stricken; and plaintiffs were precluded from using a substitute pilot expert.[6] On May 12, 1987, the magistrate denied plaintiffs' motion for reconsideration. After considering plaintiffs' motion for review under Fed.R.Civ.P. 72(a), the

district court concluded that the sanctions were proper. The district court subsequently denied plaintiffs' motion for reconsideration.

## II

On appeal, plaintiffs do not contest the exclusion of testimony on the flight test conducted by Hoerner or expert opinions based on the results of that test. *See* Plaintiffs' brief at 9. But plaintiffs contend that they should not be precluded from using a pilot expert other than Hoerner.

Weber Aircraft, however, contends that if plaintiffs are permitted to use a pilot expert other than Hoerner, plaintiffs will be in a stronger position than if the preclusion order had never been entered. In effect, Weber Aircraft argues that if plaintiffs can use a pilot expert, it must be Hoerner, whose credibility, they maintain, has been seriously undermined. In support of their contention, Weber Aircraft refers to the magistrate's opinion, which notes critically that Hoerner cannot remember several significant details about the flight test, and points out inconsistencies on when he notified plaintiffs' counsel that he had performed the flight test.[7] Weber Aircraft brief at 36–37. Indeed, the magistrate stated that those inconsistencies "demonstrate[ ] Mr. Hoerner's lack of credibility." J.A. at 66. Therefore, Weber Aircraft argues, allowing the use of a substitute pilot expert would relieve plaintiffs of Hoerner's credibility problems, placing plaintiffs in a better position than if they had to rely on Hoerner as their expert. Further, Weber Aircraft maintains that permitting a substitute pilot expert would force it to again engage in costly and protracted discovery and would encourage delay by plaintiffs and other litigants in disclosing expert opinions.

---

6. The magistrate also imposed sanctions against plaintiffs' attorneys under Fed.R.Civ.P. 11. Those sanctions are not at issue in this appeal.

7. The date is one of the few details Hoerner recalls about the test. Although he remembers that the test was conducted at the Half Moon Airfield in northern California, he does not remember the fixed base operation out of which

he flew, the owner of the airplane used for the test, or the tail number of the plane. Furthermore, Hoerner made no notes on the flight test until the morning of his deposition, some three months after the flight, and he had not entered the test flight in his pilot's log as of the date of the deposition. *See* Hoerner dep. at 8–10.

Under the circumstances, the district court did not abuse its discretion by precluding plaintiffs from using a substitute pilot expert. *See Semper v. Santos*, 845 F.2d 1233, 1237–38 (3d Cir.1988); *Higginbotham v. Volkswagenwerk Aktiengesellschaft*, 551 F.Supp. 977, 980–82 (M.D.Pa.1982) (sanction precluding expert testimony concerning design defect was appropriate in light of plaintiffs' failure to comply with discovery orders), *aff'd* 720 F.2d 662 (3d Cir.1983). In his deposition, Hoerner testified that plaintiffs' counsel contacted him in the Fall of 1986 to perform a flight test. *See* Hoerner dep. at 143. He stated that he conducted the test on December 19, 1986, well before plaintiffs' February 2, 1987 response to Weber Aircraft's third set of interrogatories. Furthermore, Hoerner stated that at least once between December 19, 1986 and March 17, 1987, he informed plaintiffs' counsel that he had conducted the requested flight test.[8] *See* Hoerner dep. at 35–36, at 35–36, 143–44. Nonetheless, plaintiffs' counsel failed to disclose that fact at either the March 17 discovery conference or in the answers filed March 19, 1987 to defendants' supplemental expert interrogatories. That disclosure did not occur until March 25, 1987, the second day of the deposition of Nugent, plaintiffs' engine expert. The disclosure was made "on the eve of trial," at a time when the case could be called to trial on twenty-four hours notice.

Machen and Weber Aircraft were entitled to timely discovery of plaintiffs expert witnesses, their opinions and underlying facts, including whether a flight test was conducted and the results thereof. *See* Fed. R. Civ. P. 26(b)(4). By submitting several sets of interrogatories specifically asking for plaintiffs' experts' opinions and the bases therefor, and by making telephone and written requests for that information, defendants went beyond the necessary procedure. *See* Fed. R. Civ. P. 26(b)(4)(A)(i). Furthermore, the magistrate and the district court, through discovery conferences and orders, sought specifically, but unsuccessfully, to obtain this information from plaintiffs. Allowing plaintiffs to use a substitute pilot expert would ameliorate the impact of the sanction. It would permit plaintiffs to avoid any credibility problems connected with Hoerner, their chosen and designated pilot expert, and would engage defendants in additional discovery late in the proceedings.

Therefore, the sanction imposed by the district court was appropriate. *See In re Fine Paper Antitrust Litigation*, 685 F.2d 810, 823 (3d Cir.1982), *cert. denied* 459 U.S. 1156, 103 S.Ct. 801, 74 L.Ed.2d 1003 (1983); *see also Scarborough v. Eubanks*, 747 F.2d 871, 877 (3d Cir.1984) (a preclusion order would be an appropriate sanction for dilatory and incomplete compliance with pre-trial discovery order); *cf. Emerick v. U.S. Suzuki Motor Corp.*, 750 F.2d 19, 21–22 (3d Cir.1984) (affirming district court's refusal to admit plaintiffs' evidence of accident-site tests conducted the day before plaintiffs sought to present them at trial because admitting them would be unfairly prejudicial to defendant, which had been previously informed that no such tests had been conducted).

### III

Next, we reject plaintiffs' argument that the sanction imposed by the district court is tantamount to dismissal, requiring a balancing of the factors discussed in *Poulis*, 747 F.2d at 868. *See also Dunbar v. Triangle Lumber & Supply Co.*, 816 F.2d 126, 128–29 (3d Cir.1987) (citing *Poulis* factors); *Donnelly v. Johns-Manville Sales Corp.*, 677 F.2d 339, 342 (3d Cir.1982) (discussing factors similar to those presented in *Poulis* ).

Despite the sanction imposed, plaintiffs still have viable theories of liability. Nothing in the district court's order prohibits

---

**8.** We note that there is some inconsistency in Hoerner's testimony with respect to when he notified plaintiffs' counsel that he had performed the flight test. *See* Hoerner dep. at 145–46; 35–36; 143–44. In any event, plaintiffs' counsel admit that they knew at least by March 2, 1987, the date on which plaintiffs' counsel first saw Hoerner's February 27, 1987 telephone message stating that he had performed the test. *See* Plaintiffs' brief at 5 & n. 2: transcript of oral argument February 26, 1988 at 37.

plaintiffs from using a pilot as a lay witness, to provide purely factual, non-expert information. The pilot, without providing expert conclusions, can testify about facts observed during a flight test. The raw data and factual information supplied by the pilot may be used by Nugent, plaintiffs' engine expert, as a basis for his opinions. Acting as an accident reconstructionist,[9] Nugent can testify concerning plaintiffs' theory that the Piper Aerostar airplane with the Superstar I engine modification designed by Machen and installed by Weber Aircraft was not of merchantable quality or fit for the purposes for which it was designed, sold and intended to be used. *See* App. at 20, 24 (amended complaint, alleging dangerous and defective design and installation of the Superstar I modification). Dangerous and defective design and installation of an engine modification are within the expertise of an engine expert. Therefore, plaintiffs may present that theory of liability through Nugent, without a pilot expert.[10] Plaintiffs conceded as much at oral argument before this court. The appellate attorney for plaintiffs stated that:

> They have an engineer who served like an accident reconstruction person and he needs certain facts to plug into his formula. And he plugs into his formula a flight test, somebody who's supposed to go up, put a gauge on the engine to see—and stall it out, intentionally turn it off at seventeen thousand feet. And then start it out again....
>
> [Y]ou've got to take a gauge and put it on this engine and then stall it out and all you need is a video camera up there

to—or somebody taking notes to see what happens.

> THE COURT: ... And I thought the order used the term, expert. And it seems to me we're not talking about expert testimony. We're talking about factual testimony by a person who happens to be a pilot and maybe could qualify as an expert.
>
> But if the order doesn't preclude the use of factual testimony from a pilot, then it may not be ... outcome determinative under the *Poulis* [...].
>
> MR. RAYNES [appellate counsel[11] [for plaintiffs]: I agree with Your Honor on that.

Transcript at 6, 14. Therefore, Nugent can testify concerning the design defect and related claims, using the factual, non-expert observations made by a pilot during a flight test.

Plaintiffs also contend that the effect of the district court's order is tantamount to dismissal because they will be unable to rebut a defense that the crash was due to pilot error. In this factual context, we find that inquiry too speculative. It would require predicting first what evidence the defendants would present to support their defense. Next, we would have to predict what evidence plaintiffs could introduce to sufficiently rebut that defense notwithstanding the sanction. We note that whether plaintiffs may have greater difficulty rebutting such a defense without a pilot expert is not dispositive. That is the purpose of a sanction.

Contrary to plaintiffs' assertion, our decision in *Ali v. Sims*, 788 F.2d 954 (3d Cir.

---

9. At oral argument before this court, plaintiffs' counsel stated that the engineer would serve as an accident reconstructionist. Transcript at 6.

10. Plaintiffs also contend that pilot testimony is crucial to the adequacy of the flight tests conducted by Weber Aircraft after the conversion of the Aerostar with the Superstar I modification. However, Nugent as an engine expert can testify concerning proper methods of testing an engine modification for defects in both design and installation, and therefore whether the tests conducted by Weber Aircraft were adequate. In addition, plaintiffs contend that a pilot expert is critical (1) to their theory that Weber Aircraft sold Hagans a plane that he was unqualified to pilot, (2) to assessing the utility of Machen's

flight manual during an emergency, and (3) to assessing the adequacy of the instructions given to Hagans by Weber Aircraft regarding the modified plane. However, as discussed *supra*, plaintiffs have other theories of liability left open to them by the district court's order. Therefore, to the extent that the order makes proving their "oversold" theory or assessing the flight manual's utility or the adequacy of Weber's instructions more difficult, its effect is not tantamount to dismissal.

11. Appellate counsel is distinct from the attorneys referred to as "plaintiffs' counsel" throughout this opinion.

1986) is inapposite. In that case, the sanction (factual allegations of plaintiffs complaint deemed admitted) resulted in summary judgment in favor of plaintiff on count one. Count two, however, was submitted to the jury, which found defendants liable. *See id.* at 956.

On appeal, we concluded that although the district court did not expressly enter a judgment by default, "a *Poulis* balance" was required because the sanction resulted in summary judgment for plaintiff on count one. *Id.* at 957. The fact that the sanction did not result in summary judgment on count two did not alter our conclusion. The jury's decision on that count was tainted because verdict forms supplied to the jury stated that the court already had found defendants liable under count one. *Id.* at 958 n. 5. Therefore, because the sanction imposed in *Ali* led directly and inevitably to defendants' liability on all counts, it was tantamount to a default judgment on all counts.

In contrast, plaintiffs in this case still may establish liability on at least some, if not all, of their theories through use of a pilot as law witness, and their engine expert. Unlike the defendants in *Ali*, plaintiffs here will still have their day in court. Indeed, the jury in this case need not be informed of the sanction or its basis. Therefore, a *"Poulis* balance" is not required.

### IV

We hold that the district court did not abuse its discretion by precluding plaintiffs from using a substitute pilot expert in this litigation. Therefore, we will affirm the order of the district court.

Costs taxed against appellant.