UNITED STATES of America

v.

**68.94 ACRES OF LAND, MORE OR LESS, SITUATE IN KENT COUNTY, STATE OF DELAWARE, and Sally A. Dickerson, Trustee, et al., Appellants.**

No. 90–3175.

United States Court of Appeals,
Third Circuit.

Argued Aug. 31, 1990.

Decided Oct. 31, 1990.

See also 736 F.Supp. 541.

Joseph A. Artabane (argued), Elliott, Bray, & Riley, P.C., Washington, D.C., for appellants.

Richard B. Stewart, Asst. Atty. Gen., William C. Carpenter, Jr., U.S. Atty., Kent A. Jordan, Asst. U.S. Atty., Wilmington, Del., Jacques B. Gelin, Robert L. Klarquist (argued), Attys., Dept. of Justice, Environ-

ment & Natural Resources Div., Washington, D.C., for appellee.

Before HUTCHINSON, NYGAARD and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

The central issue of this appeal concerns the district court's exclusion of the testimony of two proposed expert witnesses as well as portions of the landowner's testimony in a land condemnation proceeding. The United States Government, through its power of eminent domain, took various property interests in parcels of land owned by the appellant Sally Dickerson, Trustee (Dickerson). During a jury trial to determine the value of the condemned property interests, the trial judge refused to allow either of defendant Dickerson's proposed experts to testify and struck portions of Dickerson's testimony regarding the value of her land.

The jury returned a judgment requiring the Government to pay Dickerson $95,709.85 as just compensation for the taking, a substantially lower figure than the one urged by Dickerson and her proposed experts. Dickerson appeals, contending that the district court abused its discretion in making its exclusionary rulings. We conclude that it was error to exclude one of the proposed experts and to strike a portion of Dickerson's testimony. We vacate the judgment and remand for further proceedings.

## I.

On April 3, 1987, the Government brought an action to acquire certain property interests in three tracts of land owned by Dickerson as sole trustee of the property. These tracts, nominated 305, 305E, and 307E, were part of a 600–acre farm owned by Dickerson in Kent County, Delaware, near the Dover air force base. The Government took a fee interest in tract 305 and avigation easements in the other tracts in order to expand a runway at the base.

Tract 305, a 20.84–acre parcel which the Government took in fee, had previously been encumbered by a federal clear zone easement and a clearance easement. Both these easements are intended to assure air force pilots clear vision when taking off and landing near the subject property; however, the clear zone easement is considerably more restrictive than the clearance easement. With the clear zone easement, the Government had previously acquired *inter alia* the right to make low and frequent flights, the right to remove all buildings and any obstructing vegetation, and, generally, the right to prohibit all uses of the land except for agricultural purposes.

In addition to the fee interest in tract 305, the Government took a clear zone easement in tracts 305E and 307E, consisting of 45.39 acres and 2.71 acres respectively. Prior to this taking, both tracts were previously encumbered by the less restrictive clearance easements. Dickerson did not challenge the legality of these takings but maintained that the subject property had a value far above the amount the Government offered to pay.

During pre-trial discovery, the district court ordered the parties to exchange reports of the appraisers who would be called upon at trial to proffer expert opinions of the condemned property's value. The Government subsequently provided Dickerson with an appraisal report prepared by its proposed expert, Arnold Goldsborough ("the Goldsborough report"). Dickerson, who did not hire an appraiser, provided the Government with only a "counseling report" submitted by her proposed expert, Gary Parker. Apparently, because she found the cost of a full appraisal prohibitive, Dickerson retained Parker instead to estimate the percentage diminution in value resulting from the avigation easements without testifying as to the ultimate value of the condemned property. To establish an ultimate value for the condemned property, Dickerson planned to call Dr. Susan Wachter, also not a traditional appraiser, who would have testified based upon her study of real estate development in and around Kent County. At trial, the court

excluded both Wachter's and Parker's testimony.

The Government asserts that at a pre-trial conference on December 7, 1989, defense counsel represented that Dickerson's proposed expert witnesses would rely solely upon the market data contained in the Goldsborough report. Two weeks later, however, Dickerson provided the Government with copies of reports of additional market data relied upon by Parker and Wachter. Following the Government's objection, the district court ruled in a letter that according to the notes it took at the pre-trial conference, defense counsel "represented that the only data relied upon by Mr. Parker was data supplied in the Government's reports." The court concluded that Dickerson would be held to this agreement. The court's letter ruling also held that evidence of comparable sales occurring after the date of taking would be inadmissible.

At trial, the Government's expert appraiser, Goldsborough, asserted that the highest and best use of the condemned property was as farmland, that the unencumbered value of nearly all the property was $2,100 per acre,[1] that the pre-existing clearance easements caused a 10% diminution, and that the clear zone easements resulted in a further 40% reduction in market value. Goldsborough's calculation placed a value of the property interests taken by the Government at $76,488.10.

Following the testimony of Goldsborough and his assistant, the defendant attempted to introduce the testimony of Parker opining that the Dickerson property suffered a 90% loss of value as a result of the clear zone easements, substantially greater than the 40% diminution suggested by Goldsborough. During the ensuing voir dire, Parker disclosed that in formulating his opinion he had relied upon sources of market data other than that supplied in the Goldsborough report. The court sustained the Government's motion to have Parker disqualified. In its ruling, the district court declared,

Twice prior to trial, defendant was directed to disclose all data relied upon by defendants' experts. At the pretrial conference, defendants' attorney stated that the only data to be relied upon by the defendants' experts was the data supplied by the government. Accordingly, ... defendants' attorney was informed by the Court that, based upon his representation, any testimony reflecting data other than that provided by the government would be excluded from trial.... Mr. Parker's testimony on voir dire clearly indicated that he relied on data other than data supplied by the government when he calculated the 90– and 30–percent figures.

The court further stated that, by withholding the underlying data relied on by Parker, the defendant had engaged in "trial by ambush" and effectively foreclosed an opportunity for the Government to adequately prepare for the cross-examination of Parker.

The defendant's other proposed expert, Dr. Susan Wachter, is a real estate economist. At the time of trial, Wachter was an Associate Professor of Finance at the Wharton School, University of Pennsylvania, and a faculty member of the Wharton Real Estate Center and the Graduate Group of City and Regional Planning. She has been an advisory committee member to the Federal National Mortgage Association and a consultant to private industry and government agencies on housing and growth management issues. Wachter has published several journal articles and two books and is the past president of the American Real Estate and Urban Economics Association.

On voir dire, Wachter testified that she had conducted several formal studies of the growth patterns and real estate values in various communities, including Manhattan, New York, and Montgomery County, Maryland. In the course of these and other studies and as a board member of Beneficial Mortgage Corporation, Wachter also examined hundreds of properties within

1. Inexplicably, the Government appraised the 2.71 acres of Tract 307E at $10,000 per acre.

The defendant claims that Tract 307E is nearly identical to the other two tracts.

Delaware and Kent County. In preparing her opinion testimony in this case, Wachter actually visited the condemned Dickerson property. From government statistics, Wachter examined the population growth trends, expanding economy, and developing infrastructure in and around Kent County. She also studied recent sales of comparable land around the Dover Air Force Base. Based upon this information, Wachter was prepared to proffer the opinion that immediately prior to its condemnation, the Dickerson property enjoyed development potential for residential and light industrial use and that it had a value of $6,000 an acre unencumbered.

Following voir dire, the district court granted the Government's motion to exclude Wachter's testimony, referring to Wachter's data as "some kind of statistics in the air" and "purely speculative." The trial court also ruled that Wachter did not qualify as an expert "based on her knowledge of this particular condemnation at the time it was taken."

After the exclusion of Dr. Wachter's testimony, Dickerson testified that, in her opinion, the unencumbered value of her condemned property was between $6,000 and $7,000 an acre at the time of taking. In support of her conclusion, Dickerson attempted to make reference both to comparable sales occurring after the date of taking and to the study prepared by the disqualified Parker. Consistent with its earlier letter ruling, the district court barred Dickerson from referring to these two sources of data.

At the conclusion of trial, the court instructed the jury to determine the unencumbered value of each of the condemned tracts as of the time of taking, the percentage diminution caused by the previously existing clearance easements, and the percentage diminution resulting from the clear zone easements. These findings were then used to calculate the total value of Dickerson's property interests taken on April 3,

1987. The jury found that the unencumbered value of tracts 305 and 305E was $2,100 per acre, and the value of tract 307E was $10,000 per acre, the exact figures suggested by the Government's expert. After calculating the percentage loss of value attributable to each of the different easements, the district court entered judgment in the amount of $95,709.85. Dickerson appealed.

## II.

The Federal Rules of Evidence provide for the introduction of opinion testimony by an expert who is qualified by "knowledge, skill, experience, training, or education" when the expert's "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."[2] Fed.R.Evid. 702. The qualification of expert witnesses is committed to the discretion of the trial court, and this court reviews such rulings under the abuse of discretion standard. *Linkstrom v. Golden T. Farms*, 883 F.2d 269, 269 (3rd Cir.1989). The finding of facts made by the district court in its exclusionary ruling are reviewed by this court to determine only whether or not they are manifestly erroneous. *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313, *reh'g denied* 370 U.S. 965, 82 S.Ct. 1578, 8 L.Ed.2d 834 (1962).

This court, however, adopts a more discriminating review of the district court's exclusion of expert witnesses where the trial court has committed an error of law when ruling upon an expert's qualifications. *See In re Japanese Products*, 723 F.2d 238, 278 (3rd Cir.1983), *rev'd on other grounds, Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (holding that our review of an expert's exclusion "must be more discriminating if we believe that the court's exercise of discretion proceeded under a misapprehension

---

**2.** The Rules permit expert witnesses to base their opinions in any given case upon any of three sources: firsthand observation of the witness prior to trial, presentation at trial of facts or data through the so-called hypothetical question, or the presentation of data to the witness outside the court when it is of a type "reasonably relied upon by experts in the particular field." Fed.R.Evid. 703 and Notes of Advisory Committee.

as to the meaning of the governing rules"); *U.S. v. 60.14 Acres of Land, Etc.*, 362 F.2d 660, 663 (3rd Cir.1966) (holding that broader review pertains where the district court's exclusion proceeded from its misapplication of "a general rule of law which he believed was binding and which would render an entire class of witnesses incompetent"). In addition, helpfulness is the touchstone of admissibility and doubts as to whether an expert's testimony will be useful "should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions." *In re Japanese Electronic Products*, 723 F.2d at 279.

■ Expert opinion testimony acquires special significance in an eminent domain proceeding where the sole issue is the value of condemned property. The Fifth Amendment guarantees a landowner's right to just compensation for the Government's taking of private property for public use.[3] The Supreme Court has interpreted the just compensation clause to require that condemnees receive the value of the highest and best use for which the property is adaptable in the reasonably near future from the vantage point of the date of taking. *Olson v. United States*, 292 U.S. 246, 255, 54 S.Ct. 704, 708–09, 78 L.Ed. 1236 (1934). Although mere speculative uses of the property should not be entertained by the factfinder, evidence of a potential use should not be excluded merely because it depends upon the existence of extrinsic conditions. Justice Brandeis long ago observed this fundamental maxim of just compensation law when he stated,

> The special value of land due to its adaptability for use in a particular business is an element which the owner of land is entitled, under the Fifth Amendment, to have considered in determining the

amount to be paid as the just compensation upon a taking by eminent domain. *Mitchell v. United States*, 267 U.S. 341, 344–45, 45 S.Ct. 293, 294, 69 L.Ed. 644 (1924).

The value of property taken by the Government, which is no longer on the market, is largely a matter of opinion. Since there are no infallible means for determining with absolute conviction what a willing buyer would have paid a willing seller for the condemnees' property at the time of taking, eminent domain proceedings commonly pit the Government's valuation experts against those of the landowner. Thus, the exclusion of one or all of either party's proposed experts can influence substantially the amount of compensation set by the factfinder. Not only does the landowner have a strong interest in receiving just compensation for property, the public as well has vested interests in insuring that the Government does not pay more than what the owner justly requires. Recognizing the critical role of expert witnesses in these cases and the strong interest on both sides that compensation be just, trial courts should proceed cautiously before removing from the jury's consideration expert assessments of value which may prove helpful. In a case similar to this one, this court noted the value of exercising caution in this area when we stated,

> Artificial rules of evidence which exclude from the consideration of the jurors matters which men consider in their everyday affairs hinder rather than help them at arriving at a just result. In no branch of the law is it more important to remember this, than in cases involving the valuation of property, where 'at best, evidence of value is largely a matter of opinion'.

*U.S. v. 60.14 Acres of Land, Etc.*, 362 F.2d 660, 668 (3rd Cir.1966) (quoting Chief Judge Parker in *U.S. v. 25.406 Acres of*

---

**3.** That guarantee also applies where the Government takes only a portion of the bundle of rights in property held by a landowner. Where the Government condemns only a part of a landowner's holding—as in the case of its taking avigation easements—just compensation is measured by the difference between the market value of the entire holding immediately before the taking and the remaining market value immediately thereafter of the portion of property rights not taken. *See U.S. v. 91.90 Acres of Land, Situate in Monroe County, Mo.*, 586 F.2d 79, 86 (8th Cir.1978), *cert. denied* 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045 (1979).

*Land,* 172 F.2d 990, 995 (4th Cir.), *cert. denied,* 337 U.S. 931, 69 S.Ct. 1496, 93 L.Ed. 1738 (1949) (citations omitted)).

### A.  Exclusion of Dr. Susan Wachter

■ The defendant claims that the district court abused its discretion by prohibiting Dr. Wachter from testifying. As an initial matter, the district court had no quarrel with Wachter's expert credentials. Indeed, it is hard to imagine how the court could have objected on that basis: her accomplishments in real estate economics and finance are formidable. She is an associate professor at a prestigious business school, has published two books and several journal articles, counsels private industry and public agencies on real estate values, and is past president of the American Real Estate and Urban Economics Association.

Although the district court never issued a clear statement regarding its exclusion of Wachter, the record reveals that the court was apparently concerned with the methodology employed by Wachter in estimating the value of the Dickerson property. According to the court, her method was overly speculative, amounted to "statistics in the air" and did not manifest sufficient knowledge of this condemned property at the time it was taken. Underlying the district court's objection appears to be an uneasiness with land valuation experts whose knowledge of the subject property has been acquired in some fashion other than in the course of a traditional appraisal.

In an attempt to understand the reasons for the district court's exclusion of Wachter, we turn first to compare the method of property evaluation utilized by the Government's appraisers and accepted by the court and the method employed by Wachter. In preparing his appraisal report for the Government, Goldsborough surveyed the soil conditions on defendant's land, inspected the existing structures, determined the existence of easements on the land, examined the location of relevant highways, and inspected the zoning codes and tax records applicable to the property. From this information, Goldsborough concluded that the "most logical use" for most of the subject property was as farmland and that the possibility for residential development was limited. Goldsborough then calculated the value of the subject land by comparison to four sales of similarly-situated land between 1984 and 1987.

Wachter, on the other hand, appears not to have independently investigated particular aspects of the subject property, such as soil conditions, but instead relied upon the Goldsborough report and other studies for such information. She focused primarily on studying trends of development occurring in the Dover area and, based on these studies, formed the opinion that Dickerson's property had a higher value as residential property. Wachter's conclusion relied in part on the construction of a new highway near Dickerson's property which had been in the planning stage as early as 1986. The Goldsborough report, however, never mentioned this new highway. Finally, both Goldsborough and Wachter personally visited the Dickerson property in conjunction with their assessment. Indeed, Wachter commented on voir dire that her visit to the Dickerson property in 1989 confirmed her predictions as to the kind of development which would occur there.

From this basis, the district court concluded that Wachter lacked sufficient knowledge of the condemned property. Recognizing the peculiar features of every parcel of land, this court requires that one of the essential attributes of every qualified real estate expert is knowledge of the particular property condemned. *U.S. v. 60.14 Acres of Land, Etc.,* 362 F.2d 660, 668 (3rd Cir.1966) (holding that "the essential elements of the real estate expert's competency include his knowledge of the property and of the real estate market in which it is situated, as well as his evaluating skill and experience as an appraiser"). However, this court has never interpreted this requirement to mean that only those experts trained in traditional land appraisal techniques are qualified to render valuation opinions in eminent domain proceedings.

In *60.14 Acres of Land* this court reversed the district court's exclusion of an expert who was not a traditional appraiser

but whose knowledge of the subject property's value was derived from a then-novel methodology. Although the trial court acknowledged the real estate expert's credentials, it disqualified him from testifying because he had acquired his knowledge of values in the area as a result of his study of past sales rather than contemporaneously with each sale transaction, which would have been the case if he had been the broker for each sale. This court held that the methodological distinction drawn by the trial judge was artificial and at most should only affect the weight of the expert's opinion, not its admissibility. *U.S. v. 60.14 Acres of Land, Etc.*, 362 F.2d at 666. Thus, the rule that some knowledge of the condemned property is necessary to qualify a valuation expert was not intended as an absolute bar to those persons who obtain their knowledge of the property in the course of a statistical study or some other methodology.

A review of the record in this case reveals that Dr. Wachter was fully familiar with the Dickerson property and the area surrounding the Dover Air Force Base. According to her testimony, Wachter visited numerous properties in Delaware and in Kent County. She personally visited the Dickerson property and inquired about development trends in that area. During voir dire the Government attempted to expose certain deficiencies in Wachter's familiarity with the Dickerson property, including her lack of knowledge of certain physical characteristics of the Dickerson land and the precise location of a proposed highway. Although the Government's questions did point out problems for a factfinder to consider when determining the weight to be accorded Wachter's opinion, the Government did not demonstrate that Wachter was so lacking in familiarity with the subject property as to render her testimony inadmissible. Indeed, Wachter had extensive familiarity with real estate values in the Dover area. We do not state precisely what the threshold of familiarity should be to qualify an expert to testify. However, where, as here, the real estate expert personally visited the subject property and compared the particular features of the property to numerous other properties in the surrounding area, the district court should not have excluded the expert's testimony because of a lack of personal familiarity with the land.

Apart from the objection that Wachter lacked sufficient familiarity with the Dickerson property, neither the district court nor the Government pointed to any specific facts supporting the conclusion that Wachter's opinion about the development potential of the Dickerson property was overly speculative. Although this court has never specifically approved of expert testimony based upon the particular methodology employed by Wachter in this case, other courts have considered and admitted such testimony. *See, e.g., U.S. v. 0.161 Acres of Land in Birmingham, Ala.*, 837 F.2d 1036 (11th Cir.1988) (holding that the district court's exclusion of testimony of an accomplished real estate economist was reversible error). In that case, the court concluded that the expert's study of similar real estate sales, his considerable training as an economist, and his familiarity with the local market all supported his ability to testify as an expert. The court added, "An economist is qualified to testify about the market value of property although his valuation methodology is somewhat unique and he relies upon statistics provided by a government agency." *0.161 Acres*, 837 F.2d at 1041 (citation omitted). Likewise, other courts have approved of such expert economic analysis to determine property value. *Clinchfield R. Co. v. Lynch*, 784 F.2d 545, 553 (4th Cir.1986). The record in this case supports at most that Wachter's analysis was novel and unfamiliar to the court. The court's own discomfort with Wachter's studies and analysis, however, may not serve as the basis for denying a condemnee an opportunity to present such evidence of her property value, where there is no finding that the analysis relies upon events which are not reasonably probable as of the date of taking.

For the foregoing reasons we hold that Dr. Wachter's testimony should not have been excluded and the exclusion was not consistent with the exercise of sound dis-

cretion. In our review, "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected...." Fed.R. Evid. 103(a). In this case, the court's exclusion of Wachter's testimony affected a substantial right of the landowner because had Wachter testified, the jury also would have had evidence before it of property values more than twice the Government's estimate.

### B.  Exclusion of Gary Parker

■ The Government's voir dire of Parker disclosed that Parker had relied upon market data other than that contained in the Goldsborough report in forming his opinion as to the percentage diminution attributable to each easement. The district court found this reliance contravened earlier representations of Dickerson's counsel made at the pre-trial conference, when counsel asserted that the only data to be relied upon by Parker was the data supplied by the Government. In its letter ruling of December 28, 1989, the court declared that Dickerson would be held to that representation and, therefore, the court excluded Parker's testimony as a sanction for defense counsel's failure to abide by his pre-trial representation to the court and as a cautionary measure to prevent unfair surprise to the Government. In response, Dickerson claims that counsel stated at the pre-trial conference that Parker would rely only *in part* upon the Government's market data.[4]

Evidence in the record demonstrates that both the trial judge and counsel for the Government reasonably believed that at a pre-trial conference on December 7, 1989, in response to concerns about the exchange of experts' reports, defendant's counsel declared that Parker would be relying solely upon market data in the Goldsborough report. The trial judge took notes at that conference and, upon reviewing those notes at trial, concluded that Dickerson's counsel had made such a representation. Furthermore, the trial court had earlier memorialized this conclusion in a letter ruling of December 28, 1989. This court is of course in no position to determine conclusively what counsel did or did not say at the pre-trial conference. We review findings of fact to determine only whether or not they are manifestly erroneous. Here, the district court's finding that defense counsel agreed to limit Parker's reliance to the Goldsborough data is supported by the record and is not erroneous. Therefore, the court did not abuse its discretion by issuing the pre-trial order premised upon this finding restricting the bases for Parker's testimony.

Having concluded that the district court's finding as to the Parker testimony was not erroneous, we must next determine whether or not such a finding could support the sanction of excluding Parker's testimony. As a sanction for the failure to obey a pre-trial order, the Federal Rules of Civil Procedure authorize district courts to prohibit the admission of evidence proffered by the disobedient party. Fed.R.Civ.P. 16(f), 37(b)(2)(B). This court has upheld the exclusion of expert witnesses as an appropriate sanction for a party's violation of a discovery order or some other pre-trial order. *Hagans v. Henry Weber Aircraft Distributors, Inc.*, 852 F.2d 60, 64 (3rd Cir.1988) (holding that the exclusion of plaintiff's substitute pilot expert was a proper sanction for the plaintiff's failure to disclose all the bases of the original pilot

---

**4.** Furthermore Dickerson argues that the Government could not have been surprised by the additional market data relied upon by Parker because the Government had access to those reports in a separate land condemnation proceeding. Dickerson claims that the Government had previously deposed Parker in a separate land condemnation proceeding involving tracts of land in close proximity with Dickerson's property and was thus thoroughly familiar with all the data relied upon by Parker in this case. This court does not have before it the record in the other proceeding and thus we do not decide whether or not the Government's previous access to such collateral information would have mitigated its surprise upon the discovery that Parker relied upon such data. In any case, the receipt of collateral information by the Government in another separate and independent proceeding does not relieve the condemnee of her responsibility to live up to a pre-trial representation made to the court upon which the adversary relied.

expert's opinion in accordance with the district judge's pre-trial order); *Emerick v. U.S. Suzuki Motor Corp.*, 750 F.2d 19, 21 (3rd Cir.1984) (affirming district court's exclusion of plaintiff's expert witness where plaintiff violated local court rules). Indeed, this court has upheld far harsher sanctions for a party's violation of a discovery order, including dismissal of the action. *Hicks v. Feeney*, 850 F.2d 152, 153 (3rd Cir.1988), *cert. denied* 488 U.S. 1005, 109 S.Ct. 786, 102 L.Ed.2d 777 (1989); *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 870 (3rd Cir.1984).

Therefore, under the Rules of Civil Procedure and this court's decisions, the district court did not abuse its discretion by excluding Parker's testimony as a sanction for the failure to comply with the court's pre-trial order restricting the bases of Parker's opinion. The appropriateness of this sanction is further supported by the possible prejudice to the Government in having to cross-examine Parker without being afforded the time necessary to scrutinize the additional market data.

However, the defendant argues that the sanction imposed here was tantamount to dismissal and this court should therefore apply more discriminating review. This court applies a more discriminating balancing test to a trial court's sanction which constitutes dismissal of the action or is tantamount to dismissal. *Poulis, supra* at 868. In dismissing this contention, we simply question by what stretch of the imagination the defendant can conclude that a judgment entered in her favor in the amount of over $95,000 is tantamount to dismissal of her cause of action. Clearly, no decision of this court has interpreted the meaning of "dismissal" to have such fluid contours.

### C. Striking of Portions of Sally Dickerson's Testimony

The trial court struck two portions of Dickerson's testimony: her reference to the study prepared by Parker and her reference to post-taking comparable sales. On appeal, Dickerson contends that these exclusions were an abuse of discretion which denied her the opportunity to fully render her opinion as to the value of her own property.

■ We first examine the trial court's exclusion of Dickerson's testimony referring to the Parker study. Dickerson testified on direct examination that, in her opinion, the clear zone easements reduced her property value by 90% and the earlier clearance easements diminished its value by 30%. When asked what she based this opinion upon, Dickerson responded that she relied upon the study prepared by the previously-excluded Parker and, when she prepared to elaborate upon the Parker study, the court interrupted her saying, "Now, that is objectionable. I guess I will have to say that. You know Mr. Parker could not testify to that." Thereafter, the court barred Dickerson from discussing the basis of her opinion about the value diminution caused by the easements.

The Federal Rules of Evidence generally permit landowners to give opinion evidence as to the value of their land due to the special knowledge of property which is presumed to arise out of ownership. Fed.R. Evid. 702 advisory committee note ("within the scope of the rule are not only experts in the strictest sense of the word ... but also the large group sometimes called 'skilled' witnesses, such as ... landowners testifying to land values"). One authority on eminent domain proceedings has noted,

> [T]he owner of land taken is generally recognized as qualified to express his opinion as to its value merely by virtue of his ownership. The owner is deemed to have sufficient knowledge of the price paid, the rents or other income received, and the possibilities of the land for use, to render an opinion as to the value of the land.

Nichols, The Law of Eminent Domain § 23.03 at 23–30 (1990) (citations omitted).

The defendant argues that her opinion as to the value of her land is admissible without further qualification. She cites two cases supporting this proposition, neither of which, however, dealt with the situation where a landowner indirectly attempted to introduce through her testimony evidence

which the court precluded her expert witness from testifying to as a sanction for violation of a pre-trial order. *U.S. v. 10,-031.98 Acres, In Las Animas,* 850 F.2d 634, 640–41 (10th Cir.1988) (holding improper the district court's exclusion of a ranchowner's testimony referring to the sales of comparable ranches because ranchowner could not recount details of individual sales); *LaCombe v. A–T–O, Inc.,* 679 F.2d 431, 434–35 (5th Cir.1982) (reversing district court's exclusion of landowner's testimony because it relied in part on depreciation schedules the accuracy of which the landowner was not qualified to verify). In this case, to permit Dickerson to present to the jury findings and opinions contained in Parker's study would completely undermine the sanction properly imposed by the court upon the defendant.

Embracing defendant's broad position here would nullify the trial court's exercise of its discretion to ever exclude expert witnesses in land condemnation proceedings, because excluded opinion testimony could always slip in through landowners when testifying to the basis of their valuations. Moreover, the rationale which justifies landowners' opinion testimony—i.e., their special knowledge of the property—does not extend to the mere repetition of another's assessment of the property's value. Therefore, we hold that the rule which generally permits the admission of a landowner's value testimony does not apply to a situation where the owner merely repeats the opinion of an expert witness whose testimony has been previously excluded by the court as a court sanction. The district court's striking of Dickerson's references to Parker's study was thus not an abuse of discretion.

■ Turning to the second excluded portion of Dickerson's testimony, prior to trial, the defendant attempted to obtain the court's permission to introduce evidence of sales in 1988 and 1989 of property comparable to Dickerson's. Two of these proper-ties sold for more than $8,000 per acre and two others sold for over $10,000 an acre. However, in its letter ruling of December 28, 1989, the district court stated without explanation that "comparable sales *after* the taking will be inadmissible," and thereafter prevented Dickerson at trial from making any references during her opinion testimony to post-taking comparable sales. At no time did the district court address defendant's objection that these sales should be admitted into evidence because they were not too remote in time from the date of taking and the condemnation event itself could not have inflated the prices of these after-sales.

The majority of circuit courts have rejected a *per se* rule in eminent domain proceedings prohibiting the introduction of evidence of post-taking comparable sales.[5] Thus, the district court must determine the comparability of post-taking sales in each case on a case by case basis. A blanket exclusion of post-taking comparable sales is appropriate only where there is some showing that the condemnation event itself has inflated the sale price of the comparable properties. *Olson v. United States,* 292 U.S. 246, 256, 54 S.Ct. 704, 709, 78 L.Ed. 1236 (1934). In his seminal opinion on the admissibility of post-taking comparable sales, Judge Lombard long ago stated,

> There is no absolute rule which precludes consideration of subsequent sales. The general rule is that evidence of "similar sales in the vicinity made at or about the same time" is to be the basis for the valuation and evidence of all such sales should generally be admissible, including subsequent sales. The generality of this rule is limited, however, by the consideration that a condemnation itself may increase prices and the government should not have to pay for such artificially inflated values.... But that possibility does not produce a hard and fast exclusionary rule.

5. *See, e.g., U.S. v. 0.161 Acres of Land in Birmingham, Ala.,* 837 F.2d 1036, 1044 (10th Cir. 1988); *U.S. v. 312.50 Acres, Prince William County, Va.,* 812 F.2d 156, 157 (4th Cir.1987); *U.S. v. 320.0 Acres of Land, More or Less, Etc.,*

605 F.2d 762, 799 (5th Cir.1979); *U.S. v. 1,129.75 Acres of Land, Etc.,* 473 F.2d 996, 999 (8th Cir.1973); *U.S. v. 63.04 Acres of Land,* 245 F.2d 140, 144 (2nd Cir.1957).

*63.04 Acres*, 245 F.2d 140, 144 (2nd Cir. 1957) (citations omitted).

Where there is no evidence of inflated prices attributable to the taking event and thus no absolute exclusion of after-sales applies, the trial court must make separate findings of the comparability of each of the proffered comparable properties to the condemnee's property. Courts have generally recognized that comparability is a function of three variables: the respective characteristics of the properties, their geographic proximity to each other, and the closeness in time of the sales. *U.S. v. 320.0 Acres of Land, More or Less, Etc.*, 605 F.2d 762, 798 (5th Cir.1979).

The decision whether or not to permit evidence as to post-taking comparable sales is left to the discretion of the trial court, but that discretion must be exercised consistent with the foregoing principles of law. Here, the district court excluded absolutely any consideration of post-taking sales without first finding that the taking event, the expansion of the air force runway, had inflated the land prices in the surrounding area. Indeed, it is highly unlikely that the court could have found such an event to be value-enhancing. It appears that the district court assumed that a *per se* rule excluding post-taking sales applied. As discussed above, such a rule is disfavored by most courts, and we now adopt the approach followed by those courts which do not exclude consideration of after-sale prices without the trial court first finding that the act of condemnation had inflated sales prices and determining whether the properties are comparable to the condemnee's property. Therefore, because the district court excluded consideration of post-taking comparable sales without finding that the taking event had inflated sale prices and without considering the overall comparability of the offered sales, the ruling was not consistent with the exercise of sound discretion. Our conclusion likewise applies to the striking of Dickerson's testimony in the court's earlier evidentiary ruling.[6] We hold that denying Dickerson the opportunity to testify to land values based on post-taking sales substantially prejudiced the complete presentation of her case.

### III.

In sum, we conclude that excluding the testimony of Dr. Wachter and barring the landowner Dickerson from referring to post-taking comparable sales in her testimony were inconsistent with the court's exercise of sound discretion. We also hold that these rulings caused the defendant substantial prejudice by removing from the jury's consideration estimates of her property value substantially in excess of the Government's figures. However, we affirm the district court's exclusion of Parker as a sanction for defendant's violation of a pre-trial order as well as the striking of Dickerson's testimony which referred to Parker's study.

Accordingly, the judgment of the district court will be vacated and the case remanded for further proceedings consistent with this opinion.

---

**6.** One of the post-taking sales which Dickerson attempted to rely upon at trial, the Silicato sale, involved the sale of land to the Government. The Government argues in its brief that the price paid by a governmental authority with the power of eminent domain is not admissible as a comparable sale in another condemnation proceeding where "such payments are in the nature of compromise to avoid the expense and uncertainty of litigation and are not fair indications of market value." *U.S. v. 10.48 Acres of Land*, 621 F.2d 338, 339 (9th Cir.1980), quoting *Slattery Co. v. United States*, 231 F.2d 37, 41 (5th Cir.1956). Because we conclude that the district court relied upon its earlier evidentiary ruling in excluding all post-taking sales considered by Dickerson, we do not decide whether evidence of such sales to the Government is indeed inadmissible.